Borden *v.* Curtis.

HANNAH V. BORDEN

*v.*

HENRY A. CURTIS and WILLIAM T. CONOVER.

1. A court of equity will not, under the guise of a bill for specific performance, entertain a suit for compensation or damages which might be recovered at law.

2. But where a vendee, by contract, of real estate comes into this court in good faith asking the specific performance of his contract, and with a reasonable expectation that the vendor is able to perform it, and it afterwards appears that the defendant is unable to perform, either in whole or in part, then this

·court may, and, when justice requires, will, give relief by way of compensation in money in lieu of specific performance.

3. Also, where a vendee by parol contract has so far and in such manner performed the contract on his part that he cannot be restored to his former position and has no adequate remedy at law, this court will give him relief by way of compensation in money.

4. Five heirs at law of a common ancestor, one of whom was the complainant, made partition among themselves of his real estate by mutual releases; ·one parcel was subject to a lease for years executed by the ancestor to one of the heirs jointly with a third party. This parcel, so under lease, was allotted to ·the complainant. The heir (one of the defendants, who was co-lessee of this ·parcel), promised the complainant at the time of the partition that he would ·procure from his partner a release or surrender of the lease, and stated that .his co-lessee had agreed to join him therein, and complainant accepted the share on the strength of such promise. On bill against the two lessees for ·specific performance of the agreement to surrender, it appeared that the defend-:ant heir was not authorized by his co-lessee to make such contract.—*Held,* :that the complainant was entitled to relief against the promising defendant by way of compensation in money.

On final hearing on bill, answers and proofs.

*Mr. Halsted H. Wainright,* for the complainant.

*Mr. Frederick Parker* and *Mr. Charles J. Parker,* for the defendants.

PITNEY, V. C.

This is a bill for the specific performance of a parol contract for the surrender of a lease.

Mrs. Borden, the complainant, her sister, Mrs. Van Leer, and her brothers, Asa Curtis, Abraham O. Curtis, and Henry A. Curtis, one of the defendants, were children and heirs at law of ·Osborn Curtis, who died intestate in September, 1886, seized of ·considerable real estate. One parcel of this, a store-house and yard, had been leased by the decedent to the defendants, Henry A. Curtis and William T. Conover, as partners in trade, for the ·term of ten years from December 31st, 1885, at the yearly rent ·of $520.

After the death of their father, the heirs above named made a

Borden *v.* Curtis.

friendly partition of the real estate of which he died seized, in·
which the store-house, so under lease, was set off to Mrs. Van
Leer, and part of the yard or lot included in the lease was set
off to the complainant. The complainant by her bill alleges that
it was a part of the verbal agreement for partition that the lease·
should be surrendered, and that Henry A. Curtis, the defendant,.
should procure such surrender, but Conover, the partner and co-
lessee of Henry, was not a party to that agreement.

There was no formal surrender of the lease, and the prayer of'
the bill is, that the defendants may be decreed to specifically per--
form the agreement.

A demurrer to the bill was overruled, as reported in *1 Dick.*
*Ch. Rep. 468.* The defendants then answered, and by their sev--
eral answers denied the allegation that there was any agreement,
made by either·of ,them · that ·the lease held by them should be·
surrendered, or that it ever was surrendered, either expressly or
by implication. They allege that rent accruing under it has been
regularly paid ever since the partition to Mr. Van Leer, as the
agent of his wife and of the complainant, and that these rents
had been apportioned between the complainant and Mrs. Van·
Leer.

At the hearing it appeared that the decedent died in Septem--
ber, 1886, possessed of considerable personal estate, besides·
realty, and that on the 21st of February, 1887, the defendant,
Henry Curtis filed his bill in this court against his brothers and'
sisters for a partition of the real estate of which their father died'
seized, and which consisted of several parcels; and that on
March 21st, 1887, before the proceedings had progressed beyond
the return of process, the defendant Henry, his brother Abraham,.
and his brothers-in-law Borden and Van Leer, each acting for
their respective wives, met for the purpose of arranging an ami-
cable partition, and, as a preliminary step, agreed upon values to
be fixed upon the several parcels of land for the purposes of the
partition.

Several of these parcels were situate on two sides of a block
in Manasquan, and included the corner store-house leased to and
occupied by the defendants under the lease of December 31st,

1885. The yard annexed to this store-house, and leased with it, was not in its rear, but was in the rear of and naturally belonged partly to the lot adjoining the corner store on its side and partly to the lot in the rear of the store. In fact, I infer that the yard was acquired by the ancestor under two different conveyances. At any rate, in fixing the parcels and prices for the purposes of partition, no part of the yard was attached to the corner store. A part of it was attached to the lot adjoining the corner and a part of it to the lot in the rear of the corner. Three of the parties to this interview, namely, Abraham O. Curtis, Mr. Van Leer and Mr. Borden, swore that after the prices had been so fixed, and before any further steps had been taken, it was agreed that the various parcels should go into the partition free and clear of all encumbrances; that a mortgage which was upon one of the parcels should be paid out of the personal estate of the decedent, which was ample for that purpose; and they swear that the lease held by the defendants was also mentioned as an encumbrance, and that the defendant Curtis said that it should be surrendered, and, being reminded that Conover was interested in that, said that he would be all right, and that he would see him and get his consent to it. Defendant Curtis denies this, and swears that no mention was made of it. At the close of the conference the choice of shares was put up at auction, and defendant Curtis offered to give to his brothers and sisters $500, to be divided among them, for the first choice. This offer they accepted, whereupon he asked time until the next morning to make his choice. In the meantime Mr. Van Leer, who was the acting administrator of the decedent, and knew the condition and value of his personal estate, and using the values put by the parties upon the various parcels of land, made up a statement of the aggregate value of the combined real and personal estate. It seems to have been understood that the personal estate was to be divided with the realty and used by way of owelty in equalizing the shares of realty.

The next morning, March 22d, the four persons above named met, and the defendant Curtis made his choice, taking the parcel of land situate in the rear of the corner store and including a

part of the yard included in the lease.   Borden, Van Leer and
Abraham O. Curtis all swear that at that interview defendant
Curtis was asked whether Conover had consented to surrender
the lease, and he answered that he had.   This the defendant Cur-
tis stoutly denies, and he and Conover both swear that nothing
ever passed between them on the subject.

Up to this stage of the affair there does not appear to have
been any understanding among the other four tenants in common
as to how the remaining four shares should be allotted as between
them, as indeed there could not have been.   They at once, how-
ever, made an allotment among themselves and Asa Curtis, who
was absent in Florida (subject, however, to his approval), and
proceeded to carry it out by preparing proper releases, dated on
that day but executed subsequently.   The premises adjoining the
corner store on its side, with a part of the yard under the lease,
fell to the complainant.   The corner store covered by the lease
in question fell to Mrs. Van Leer ; and her husband swore that
before the deeds were delivered he spoke to the defendant Curtis
about the rent, and that he agreed to pay rent for the store alone
to Mrs. Van Leer at the rate fixed in the lease for the store and
yard.   At the same time Mr. Van Leer was occupying, as a ten-
ant from year to year, the lot chosen by Henry Curtis, and he
agreed with Henry to continue his tenancy on the same terms.
Both Van Leer and complainant swear that there never has been
any arrangement between them by which complainant received
any share of the rent of the corner store by reason of her owner-
ship of a part of the yard, and no part of it has in fact ever been
received by her.  · On the contrary, Mr. Van Leer has ever since
collected it on behalf of and as agent for his wife.   The defend-
ants swore that they thought that Mr. Van Leer was receiving
it as agent for his wife and the complainant, to whom was
allotted the parcel adjoining the store, including a part of the
yard, but I find no warrant in the evidence for this supposition
on their behalf.

In the meantime the defendants and their under-tenants con-
tinued to use the entire yard much as they had been doing pre-
vious to the partition.   In fact, such use had always been more

or less in common with the occupants of other tenements abutting upon it, and so continued. The complainant had all the use of it she needed for present purposes in connection with her tenement, and cared nothing as to who else used it. But in the fall of 1888, about eighteen months after the partition, she planned to extend the building on her lot so as to cover a part of the yard, and this coming to the knowledge of the defendant Curtis, she heard that he boasted that he could and would prevent it, whereupon her husband prepared, and asked the defendants to sign, a short release or surrender of her part of the yard, in accordance, as she claimed, with the agreement for partition. Defendants declined to sign it, and hence this bill.

Upon a consideration of all the evidence, including the manner of the witnesses on the stand, and the circumstances and nature of the transaction and the probabilities of the case, I have come to the conclusion that the weight of the evidence upon the disputed question of fact is decidedly with the complainant, and that the defendant Curtis did agree and undertake, as part of the partition agreement, that the firm of Curtis & Conover would release the part of the yard attached to the lot afterwards allotted to the complainant from the effect of the lease held by the firm, and that all parties acted on that basis, but that the proofs fail to show, by competent evidence, that Conover actually agreed to that arrangement, and that afterwards defendants paid to Mr. Van Leer, as agent for his wife, who had become the owner of the leased store-house, the rent reserved in the lease, and that such payment was for rent for the store-house alone, and that they were not justified by the facts in supposing that they were paying it to her husband as agent of his wife and of complainant.

Henry A. Curtis joined with his brothers Abraham and Asa and his sister Mrs. Van Leer in the deed to the complainant for her share, including, of course, the land here in controversy, without any reservation of any right under the lease.

Upon this case complainant's counsel makes three points: *First.* That the lease, being then and still partnership assets, the contract so made in relation to it by one partner is binding on both, and that complainant is entitled to relief against both.

*Second.* That the subsequent conduct of the partners in paying rent to Mrs. Van Leer for the store-house alone, and making no payment for the yard to complainant, amounts to a ratification of Henry Curtis's agreement, and is, of itself, a surrender in equity, and for that additional reason the decree should go against both. *Third.* If neither of these two grounds are tenable, then that complainant is entitled to a decree against the defendant Henry Curtis, that he do specifically perform his contract by procuring a release to be executed by both defendants, with a decree in the alternate that if he shall fail to do so, then that the diminution in value of complainant's parcel of the land divided by reason of the existence of the lease be ascertained, and that defendant Curtis be decreed to pay it by way of compensation in *lieu* of specific performance.

With regard to the first position, I shall assume that if an action of ejectment were brought by the defendants against the complainant, founded on the lease, to recover possession of the part of the premises covered by it and included in the release from Henry A. Curtis to the complainant, they could not recover. The release would be a bar. *Freem. Co-ten. & P.* § *179.* But the question still remains, whether Conover would not be entitled to relief in this court against the effect of his partner's release, on the ground, *first,* that the act was not within the scope of his authority as partner, and, *second,* that the release was intended by the parties to convey only the title which he derived by descent from his father, and not that which he derived by the lease from him. The lease in this case was and is undoubtedly a partnership asset, and, as such, is subject to the disposition of each member of the firm when acting in good faith within the scope of his authority as a partner. That authority is one of agency, and is limited to the partnership business. *Lind. Part.* *124,* *126.* Here the transaction was one quite outside the partnership affairs and concerned only the individual interests of the one partner, and was known to be such by the parties dealing with that partner. For this reason I feel constrained to hold that this court should protect Mr. Conover from the effect of the release, and must refuse to enforce against him

the contract made by his partner in his behalf, but, so far as appears by legal evidence, without his authority, to surrender the lease as to the premises in question.

As to the subsequent conduct of the defendants in paying the whole rent, without apportionment, to Mr. Van Leer, while it furnishes corroboration of the truth of complainant's allegation that the contract in question was actually made, still I am not satisfied that it furnishes sufficient ground for enforcing that contract against Conover. In this connection it must be borne in mind that no change was made in the actual use of the leased premises. The principal part of the stabling was on the premises allotted to the defendant Henry, and the use of the yard allotted to the complainant was of little value and consequence to the defendants, except for light and air. Moreover, it may be well supposed that Conover paid little attention to the details of the payment of rent and its destination.

On the third point, however, I think the complainant is entitled to relief, if it be competent for this court to give it. And here arises, as it seems to me, a very nice question of equity jurisdiction and practice not yet thoroughly and authoritatively settled in this state.

Beyond all question, as it seems to me, the complainant was fully justified in any and all aspects of the case in coming to this court for relief. She accepted this land as her share of her father's estate, and parted with her interest in the remaining portions of it upon the assurance and in the belief that it was, or would be, free and clear of all encumbrance, including this lease. She accepted her brother Henry's assurance that the lease should be surrendered. He now denies that he gave any such assurance, declines to procure a surrender, and threatens to stop her from building on the part subject to the lease. It is palpable that the complainant cannot extricate herself from her situation by an undoing of the transaction. She cannot rescind the partition as between herself and Henry alone. This being the situation, what can she do? The statute of frauds prevents her from enforcing her rights at law, by recovery of damages, and she is obliged to come to this court or rest without remedy. So

far as the case shows, she had no sufficient reason to doubt, when she filed her bill, that if Henry was bound to release, his partner Conover was also bound, and that when she should establish her case as against one she would establish it as against both. She has, then, two distinct grounds for coming to this court. *First.* Because for want of a contract in writing, she could not recover damages at law, and, *second,* because even if she had a cause of action at law she still was and is entitled to have the very thing she contracted for, namely, her share free from the lease, and was entitled to the aid of the court to give it to her. Either of these grounds is sufficient of itself to give her a firm standing in this court. The question, then, is, whether, under these circumstances, this court is powerless to aid her because her brother Henry, upon whose promise she relied, is unable to fulfill it? The jurisdiction of this court to compensate in money in lieu of specific performance is well established, but it is equally well settled that it is a power to be exercised sparingly and with care and caution. It is entirely clear that this court will not, under the guise of a bill for specific performance, entertain a suit for compensation or damages which might be recovered at law. On the other hand, it seems equally clear that where a vendee, who has entered into a contract in good faith for the purchase of a complete title, comes into a court of equity for specific performance of it, and discovers after coming there that the vendor cannot make a complete title, the vendee may, at his option, have such title as the vendor can give with an abatement of price proportionate to the part of the title not conveyed. *Pom. Spec. Perf.* § *438* and cases; *Fry Spec. Perf. (3d Am. from 2d Eng. ed.)* § *1222 et seq.; Pom. Eq. Jur.* § *237 note 3; 2 Story Eq. Jur. 798; Lounsbery* v. *Locander,* 10 *C. E. Gr. 554* (at *p. 559*). The case of an inchoate right of dower is made an exception in this state on the ground that the court will not put any coercion, indirectly even, upon the wife to join her husband in a deed of land. *Young* v. *Paul, 2 Stock. 401* (at *p. 408*), *per* Chancellor Williamson; *Hawralty* v. *Warren, 3 C. E. Gr. 124; Reilly* v. *Smith,* 10 *C. E. Gr. 158; Peeler* v. *Levy,* 11 *C. E. Gr. 330* (at *p. 335*). It would seem that, in adopting this rule, the court

Borden *v.* Curtis.

assumed that it was impracticable for this court to ascertain the value of an inchoate right of dower, and that the only remedy in case of the wife's refusal was to commit the husband as for contempt.  *Young* v. *Paul, 2 Stock. 401* (at *pp. 408, 417*); *Hopper* v. *Hopper, 1 C. E. Gr. 147* (at *p. 149*), *per* Chancellor Green, and that the later cases followed *Young* v. *Paul* without question.  The same reason was relied upon in *Riesz's Appeal, 73 Pa. St. 485,* and other cases following its lead in that state. But this rule does not prevail in all the states, as appears by the citations in *Waterm. Spec. Perf.* § *511.*  In many states the courts direct compensation by way of an abatement in price equal to the value of the inchoate right of dower of the wife, ascertained by the use of the standard life tables (see *7 Paige 408*), and I cannot but think that if the matter was *res nova* in this state such practice would now be adopted.  I think the reasoning on this subject of Professor Pomeroy, in section 460 of his treatise on *Specific Performance,* is unanswerable.

The case in hand, it must be observed, is something more than a suit for specific performance.  It is a suit asking for complete performance by the defendant of a contract already partly performed by him and fully performed by the complainant, and in such manner and to such an extent as that complainant cannot be reinstated in her former position.  She has fully performed her part of the contract by releasing to her brother, the defendant, her one-fifth interest in certain lands which he purchased from his brothers and sisters.  The consideration for that conveyance was to be a clear title to her by her brothers and sisters of another piece of land, and in order to complete that consideration the defendant Henry agreed to procure a surrender of the lease in question.  The complainant, then, in reality, asks this court to give her the stipulated consideration for the land she has conveyed, and it appearing, after suit brought in good faith, that she cannot have that consideration in specie, she asks for its value in money.

An examination of the authorities and cases most nearly resembling this seems to me to sustain her claim.  In this state we have the early cases of *Cooper* v. *Wells, Sax. 10,* and *Berry* v.

*Van Winkle, 1 Gr. Ch. 269;* and in New York, *Phillips* v. *Thompson, 1 Johns. Ch. 131,* and *Parkhurst* v. *Van Court-landt, 1 Johns. Ch. 274.* These cases were founded on the early English precedents, and while not directly in point, for the reason stated by Chancellor Zabriskie in *Conover* v. *Smith, 2 C. E. Gr. 54,* still do tend strongly to support the complainant's case.

In the two New Jersey cases the contracts were in writing, but were not, under the peculiar circumstances, enforceable at law. In the two New York cases the contracts were by parol. The later cases of *Hatch* v. *Cobb, 4 Johns. Ch. 559,* and *Kempshall* v. *Stone, 5 Johns. Ch. 194,* are supposed to indicate that Chancellor Kent had receded somewhat from his position in the earlier cases, but an examination of the later cases shows, as I think, the contrary. In both cases the contracts were in writing, and in the first—*Hatch* v. *Cobb*—the complainant's laches destroyed his equity, and the second case was a bald attempt to sue in equity for damages under the guise of a bill for specific performance, when the complainant had an adequate remedy at law.

In 1839 Vice-Chancellor Hoffman, in *Wiswall* v. *McGowan, Hoffm. Ch. 125,* examines the subject and all the cases to that date, and states his conclusions thus:

"A review of these decisions leads to this result: that whenever the inability to fulfill a contract arises before the bill is filed, whether produced by a party himself or not, and is known to the complainant, a bill cannot be sustained for damages only. If such inability is caused by the act of the party after the suit has commenced, relief may be given; and also if the act is unknown to the complainant when he sues. If specific performance can be decreed as to a part, and the party has put it out of his power to fulfill the contract as to the residue by an act done since the agreement, the court will decree for that part, and assess damages for the residue. *And lastly, where the remedy is lost, or very precarious at law, and the complainant has an equitable case, the court will assess damages in his favor,*" and he decreed for partial performance and compensation in that

Borden *v.* Curtis.

·case. His decree was reversed on appeal, but not in such a manner as to disturb the principle so laid down.

Chancellor Walworth, in the still later case (1844) of *Morss v. Elmendorf, 11 Paige 277*, refused compensation upon a consideration of the circumstances of that case, but (at *p. 288*) says : ·" Where the defendant deprives himself of the power to perform the contract specifically, during the pendency of a suit to compel such performance, this court may very properly retain the suit :and award to the complainant a compensation in damages, to ·prevent a multiplicity of suits. And I am not prepared to say that such a decree might not be proper where the defendant had ·deprived himself of the power to perform the contract prior to the filing of the bill, but without the knowledge of the complainant, *or even where he never had the power to perform, if the complainant had filed his bill in good faith, supposing at the time he instituted his suit here that a specific performance of the contract could be obtained under the decree of this court.* But this court does not entertain jurisdiction where the sole object of the bill is to obtain a compensation in damages for the breach of a contract, *except where the contract is of equitable cognizance merely.*"

In 1870 the question received thorough discussion and great ·consideration in Massachusetts, in the case of *Milkman v. Ordway, 106 Mass. 202*, which resulted in a decree in substance the same as that asked for here, viz., compensation instead of performance. The opinion of Wells, J. (at *p. 253*), states the rule ·thus : " It is settled, with little or no conflict of authority, that where a defendant in a bill in equity disenables himself, pending the suit, to comply with an order for specific relief, the court will proceed to afford relief by way of compelling compensation to be made ; and for this purpose will retain the bill and determine the amount of such compensation, although its nature and measure are precisely the same as the party would otherwise recover as damages in an action at law. The character of the investigation is therefore not an insuperable objection to this mode of proceeding.

" There is also authority, though apparently questioned in the

English decisions, for the application of the same rule where the disability was caused before suit, but after the date of the agreement relied on. *In this country it seems to be generally accepted as the rule, provided the plaintiff brought his bill without knowledge of the disability, in good faith seeking equitable relief, supposing and having reason to suppose himself entitled to such equitable relief.*

"In the opinion of a majority of this court, there is equal ground in equity for applying the same rule, with the same qualifications, *to all cases where a defect of title, right or capacity in the defendant to fulfill his contract is developed by his answer, or in the course of the hearing, or upon reference of his title or capacity, after an order of fulfillment.* * * * The jurisdiction is fixed by establishing the equitable right of the plaintiff. *Relief might then be given by a decree in the alternative, awarding damages, unless the defendant should secure the specific performance sought.* In many cases this would be an effective and proper course, inasmuch as the defendant, although not having himself, at the time, the title or capacity requisite for such performance, might be able to procure it otherwise. The jurisdiction is not lost, where the court, instead of such alternative decree, determines to proceed directly to an award of damages or compensation. The peculiar province of a court of chancery is to adapt its remedies to the circumstances of each case as developed by the trial. It is acting within that province when it administers a remedy in damages merely, in favor of a plaintiff who fails of other equitable relief, to which he is entitled, without fault on his own part. The diversity of practice in this respect, and the doubt as to the jurisdiction, we think must have arisen less from the nature of the relief to be afforded than from the character of the means for determining the amount of compensation to be rendered." The learned judge then proceeds to support his view by such an exhaustive examination of all the cases to that date as renders notice of them here unnecessary.

The question was considered in this state by Vice-Chancellor Van Fleet in *Peeler* v. *Levy, 11 C. E. Gr. 333,* and in *Ludlum* v. *Buckingham, 8 Stew. Eq. 71.* In the headnote of the first

Borden v. Curtis.

case he states the rule thus : " Where the party seeking perform-ance of a contract knew, at the time the contract was made, that the defendant did not have title to part of the land he agreed to convey, *and where he shows no special ground entitling him to equitable relief ; where he has not changed his situation in conse-quence of the contract so that he must suffer loss if it is not specifically performed,* and his claim to relief stands solely upon his right to the advantage he has obtained by the contract; *and where nothing appears from which it can be fairly inferred a suit at law will not afford him full and complete redress,* a court of equity will, in the exercise of a sound discretion, deny compensa-tion and leave the complainant to his ordinary legal remedy," and relief was denied accordingly.

In the second case, *Ludlum* v. *Buckingham,* he states the doc-trine thus : " In actions for specific performance, it seems to be settled that where the defendant has, pending the suit, deprived himself of the ability to perform, or where he has, before suit, disabled himself to perform, without the knowledge of the com-plainant, and *the complainant brings his suit in good faith, believ-ing that the defendant can perform a decree for specific performance,* or *where the complainant establishes a case clearly showing that he is entitled to equitable relief, and it appears that he has no remedy at law, or that his legal remedy is precarious,* equity, although it cannot enforce specific performance, will nevertheless retain juris-diction, and give damages or *compensation,* either by estimating them itself, or by awarding an issue of *quantum damnificatus.* And it has also·been held that equity should not take jurisdiction in any case in which it appears that the defendant has deprived himself of the ability to perform in advance of the institution of the suit, and this fact was known to the complainant when he brought his suit, for in such case, it is said, the complainant knows when he sues that he cannot have actual specific performance, and that his suit is simply a suit for damages." He then proceeds to cite, with approval, the doctrine of *Milkman* v. *Ordway.* He, however, refused relief in that case on other grounds. The court of errors and appeals, in reviewing this case of *Ludlum* v. *Buck-ingham* in *12 Stew. Eq. 563,* expressly refrained from either ap-

proving or disapproving the views above quoted. Chancellor McGill, in *Church* v. *Railroad, 1 Dick. Ch. Rep. 372,* reviewed these cases with approval of the doctrine stated by Vice-Chancellor Van Fleet in *Ludlum* v. *Buckingham,* but refused the relief prayed for in the case before him on the ground that the complainant had itself done the work and performed the specific acts undertaken to be done by the defendant, and the sole object of the bill was to obtain compensation for the cost of work so done. In other words, it was a suit to recover compensation for work and labor done, under the guise of a bill for specific performance; and his decree dismissing the bill in that case was affirmed on appeal without opinion. If a decree had been made in *Ludlum* v. *Buckingham* in accordance with the doctrine there stated, it would have been binding upon me as an authority. But without that feature the doctrine is, in my judgment, both sound and salutary, and I shall follow it; and I should have done so without any discussion or citations of authority if any decree had ever been made in this state in accordance with it.

In applying it to the case in hand I find but one consideration which can be urged against complainant's relief, and that is, that she knew before suit brought that defendant Henry A. Curtis could not perform his contract without the concurrence of his partner; and the general rule undoubtedly is, as above stated, that where the complainant sues for specific performance; and knows before bringing suit that such performance cannot be had even in part, the alternative by way of compensation will not be granted. But it is plain that the case in hand is not within that rule for several reasons. In the first place, the suit is against both partners upon the basis of a contract made by both, and is therefore distinguishable from a case where the suit is brought against a party asking him to convey a title which he has not. But waiving that, still the restriction in question does not properly apply, and in fact has not been applied, unless through oversight in some exceptional instance, to cases where the complainant has a clear equity and no adequate remedy at law. In the second place, the failure to establish the contract as against Conover was not, as before remarked, to be anticipated by the com-

plainant. Henry Curtis never said to his sister, "True, I did promise to do this thing, but find it now impossible to perform by reason of my partner's refusal to join me in the necessary deed." She had no reason to expect any such refusal. The real question, be it observed, is not whether complainant must have known when she filed her bill that Henry Curtis could not perform his contract without the concurrence of Conover, but whether she is chargeable with notice that the proof would fail to connect him with the contract, and that he would refuse to join in the deed unless it did so connect him. The question is one of good faith on the part of the complainant in bringing her suit—did she bring it in the honest hope and expectation that she would succeed in getting specific performance, or did she expect at the start to fail in that, and then to fall back on compensation? If the former, then the court, according to all the cases, will give her relief, even if she have a remedy at law. If the latter, then it will not, if she has an adequate remedy at law. I think the case shows that this action was brought in good faith without any anticipation of the difficulty which has arisen. In the third place, I think the defendant Curtis is estopped from availing himself of this objection by reason of his representation that he already had the consent of Conover to the surrender, upon the strength of which the complainant has come into this court, and ought not now to be turned back at the instance of the man who made the representation.

One word as to the nature of the compensation to be awarded. It must not, and will not, be in the nature of damages, but be confined to the difference in value between the complainant's lot subject to the encumbrance of the lease and free from it. The distinction between such compensation and damages in the strict sense of the word is clear, and was illustrated by Lord Eldon, in *Todd* v. *Gee, 17 Ves. 278,* as follows : "If A contracted to sell B an estate tithe free, and B contracted to sell it to C on the same conditions, and it was found that A could not convey tithe free, he might be compelled by the court to make *compensation* for the difference in the value of the property, but not for the *damage*

sustained by B from being unable to complete his contract with C."

So here, if complainant, relying on the parol contract proven in this case, had commenced the erection of a building on the land in dispute and had been delayed or estopped in it by the defendants, she would have suffered damages which this court would not deal with. Difference in value by reason of the encumbrance stands on a different basis, and may be ascertained conveniently by the usual machinery of the court.

I will advise a decree that the defendant Henry A. Curtis do specifically perform his contract by procuring a proper surrender of the lease as to the land included in it and in the deed to the complainant, and unless he do so, then that it be referred to a master to ascertain the difference in value of the land subject to and free from the lease. In ascertaining the difference the master will proceed on the basis of there being no rent payable by the defendants to the complainant. I think the conduct of Henry A. Curtis, in paying as he did all the rent to Mr. Van Leer, puts him in this position.