JOSIAH WHITE et al., respondents,

*v.*

JOSEPHINE T. WEAVER, appellant.

[Argued November 28th, 1904. Decided March 6th, 1905.]

1. Although a lease giving the lessee an option to purchase is signed by the lessor only, yet the lessee on entering into possession thereunder becomes liable for the rent, and may enforce the option in the same manner as if he had signed the lease.

2. In order to defeat specific performance upon the ground that the vendee had notice at the time the contract was made that the vendor could not make good title, such notice must be clearly proved.

3. A vendee, as complainant in a suit for specific performance, may procure a decree for the conveyance of the vendor's interest, with an abatement by way of compensation for defects in the title, although he knew of the defects when he began his suit.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Reed, who filed the following opinion:

On September 30th, 1897, defendant signed the following paper:

"Received, September 30th, 1897, of Josiah White & Son, eighty dollars, being in full for six months' rent, in advance, of the property which I own, lying upon both sides of the shore road from Pleasantville to Absecon, known as the Capt. Saml. W. Weaver farm, containing ninety-five acres of land, more or less. This farm I hereby agree to lease to the said Josiah White & Son upon the following terms and conditions: For the first two years, viz., from October 1st, 1897, to October 1st, 1899, the rent is to be one hundred and sixty dollars per year, payable semi-annually, in advance. For the second two years, viz., from October 1st, 1899, to October 1st, 1901, the rent is to be two hundred dollars per annum, payable semi-annually, in advance. For the third two years, viz., from October 1st, 1901, to October 1st, 1903, the rent is to be three hundred dollars per year, payable semi-annually, in advance. I also give Josiah White & Son the option to buy the above-named property for the sum of eight thousand dollars at any time at or before the expiration of this lease, whenever they may so elect to purchase. And I agree to convey to them a perfect title, clear of all incumbrance, when they purchase the property. At the time of purchase the rent under this lease ceases. While the lease is in force

I reserve the attic of the house, the front bedroom on the north side, second story, and the front and back rooms which communicate with folding doors, first story, for my use and storage of furniture. Also, the right of ingress and egress to the rooms through the halls and stairs of the house. Josiah White & Son are to have the entire use of the farm and buildings except what I reserve as above, with the privilege of building upon said property, of subletting, of using the fallen and dead wood, and in any manner they see fit, so as not to injure the property. No cutting of living timber to be done by either party unless by the other's consent."

Mr. White went into possession of the property shortly after the signing of this agreement. Soon after he built a poultry-house, and later, during the first year of his term, a hogpen and slaughter-house, in which was a refrigerating-room. The poultry-house, he says, cost him about $500, and the hogpen and slaughter-house about $1,500. For the defendant one witness says that the value of the slaughter-house was $407, and another says that if anyone gave $500 for it he would be badly stuck. On December 18th, 1902, Mr. White gave notice that he elected to purchase, and tendered to Mrs. Weaver the $8,000 consideration. He had already learned, what appears to be the fact, that Mrs. Weaver owned only an undivided one-third interest in the property.

It is first insisted that while an option to buy contained in a lease will be enforced (*Page* v. *Martin, 46 N. J. Eq. (1 Dick.) 585*), yet when, as in this case, the lessee did not sign the lease and is not bound by the contract to pay rent, there is no consideration for the option given to him to purchase, and a court of equity will not enforce it. I am of the opinion that where a lease is signed by the lessor only, and the lease contains a clause giving the lessee an option to purchase, and the lessee enters into possession under the lease, that then the lessee stands in the same posture to the option as he would have stood had he signed the lease. As soon as the lessee went into possession he became liable for the rent mentioned in the lease. *12 Am. & Eng. Encycl. L. (1st ed.) 986, notes.*

It is next objected that the complainant, at the time the contract was made, knew that defendant could not make a good title, and upon this ground a court of equity will not decree specific performance. *Peeler* v. *Levy, 26 N. J. Eq. (11 C. E.*

*Gr.) 330, 331.* Mrs. Weaver says that she so told Mr. White before the lease was executed; and the sister of Mrs. Weaver says that she was present during a part of a conversation between the parties before the lease was signed, and that she heard Mr. White say, "Will the children make any fuss about this property, about your renting it?" and that she heard her sister reply, "Oh, no; I have always rented it, and they agreed to it, whatever I do." The testimony of George Weaver, who was a mere lad, I do not regard as important. Now, Mr. White denies that he had any knowledge that Mrs. Weaver did not own the entire title.

I think before specific performance is defeated upon this ground it should be clearly proved that the person with whom the contract was made to convey the title had notice that the one who agreed to make the conveyance had not the ability to give a complete title. In my judgment, it does not so clearly appear in this case as to defeat the right of Mr. White to have what he bargained for.

It is, of course, true that Mr. White had notice of the defect in Mrs. Weaver's title when he brought this suit, and I am aware that there is a line of cases holding that the court will not award compensation for a defective title if the complainant knew of the defect in the title when the suit for specific performance was begun. I do not see any equity in this rule, and it was properly discredited in *Ludlum* v. *Buckingham, 35 N. J. Eq. (8 Stew.) 71, 83.*

My conclusion is that there should be a decree for performance, with an abatement in the price by way of compensation. I will advise a decree that Mrs. Weaver convey her interest, which is a one-third undivided interest in the property, with compensation for the outstanding two-thirds interest. I think that the compensation in this case should consist of an abatement in two-thirds of the price bargained for, and that the complainant should pay Mrs. Weaver the one-third of $8,000.

*Mr. George A. Bourgeois,* for the appellant.

*Messrs. Thompson & Cole,* for the respondents.

PER CURIAM.

The decree appealed from is affirmed, for the reasons stated in the opinion of Vice-Chancellor Reed, filed in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.

*For reversal*—None.