MEYER STRELL and HELEN STRELL, his wife, complainants,

*v.*

SAMUEL ZISMAN, defendant.

[Decided April 11th, 1927.]

A screened-off portion of a store, used by the proprietor for sleeping quarters, does not constitute such portion a "room" within the definition of the Tenement-House act.

*Messrs. Howe & Davis,* for the complainants.

*Mr. Milton M. Unger,* for the defendant.

BACKES, V. C.

This bill is filed by a vendor to compel his vendee to perform his contract to purchase premises in Centre street, Newark. At the time fixed for settlement the defendant refused to comply with the contract because it was covenanted that the buildings on the premises "comply with municipal ordinances and regulations, and the provisions of the New Jersey State Tenement-House act as enforced by the state board of tenement-house supervision, to be shown by the report of the department or board enforcing the same where such ordinances, regulations and said act apply;" and in his answer he alleges that "this representation was untrue," and that "at the time fixed for the closing of title the said premises violated the said act, in that the building at 188-190 South Centre street was originally a two-family house and was occupied by three families in violation of the Tenement-House act."

The answer presents no defense. The occupation by three families of a house originally constructed for two families is not forbidden by the act. However, under this answer it

was proved at the hearing that the property consisted of a two-story building. The street floor contained two stores, one used by an upholsterer, the other by a druggist. On the second floor above the upholsterer an apartment was occupied by the complainant, and adjoining, over the drug store, another was in the use of the Poner family. The upholsterer, for his own convenience, had screened off part of the rear of the store for sleeping quarters for himself and his two sons. It was a makeshift affair and was described by witnesses as an improvised room or platform extending from the rear wall into the store, resting on two by four joists and enclosed with beaver boards to the height of six feet above the platform. This "room," it is claimed, violated the Tenement-House act and rendered complainants' title defective and invalid, and justified the defendant's rejection of the contract. The contention is untenable. The statute defines a tenement-house, under the control of the board, as follows:

"A tenement-house is any house or building or portion thereof which is rented, leased, let or hired out to be occupied or is occupied as the home or residence of three families or more, living independently of each other and doing their cooking upon the premises." *Comp. Stat. p. 3593.*

It was not pointed out wherein the "room" violated the act, but paragraph 28 (*Comp. Stat. p. 5325*) provides:

"No existing tenement-house shall be altered so as to increase the number of rooms, nor its hallways changed unless such new rooms or hallways shall be made to conform with the requirements of this act for buildings hereafter constructed."

The building is not shown to have been within the definition, for, it does not appear that the upholsterer or his sons, his family, were "doing their cooking upon the premises." It was testified that they slept in the store, but not a word about cooking. For all that appears, they may have taken their meals elsewhere. The absence of this proof was not due to mere oversight, for the witness of the defendant did not fail to observe that in the two-family apartments upstairs there was cooking.

But if it be granted that the building was within the statutory definition of a tenement-house, there was no violation of the section secondly above quoted. The sleeping quarters, screened from the gaze of customers in the store, did not rise to the dignity of a room. It was a mere insert in the store, a bunk, a poor man's substitute for a folding bed, and so frail that it could be taken apart in an hour. It was not a structural change of the building or division of the store into two rooms, and interdicted by section 28, unless the change conformed to other provisions of the act as to windows, light and air.

Now, we may assume further that the upholsterer's sleeping quarters were such so that the building did not comply with the provisions of the Tenement-House act as enforced by the board, and, withal, the defendant is not to be discharged. The contract was made March 24th, 1926, to be perfected May 1st following. Time was not stipulated to be of the essence of the contract, nor is there anything in the circumstances indicating that the closing day was not a mere formality. The defendant's objection was not to the title, nor to police supervision over the premises by the tenement-house board, but rested upon a transient offense against the tenement-house code, occasioned by a tenant, for which the complainant was not responsible, and which he promptly remedied—as promptly as the law would permit. The tenant was entitled to three months' notice to quit. *P. L. 1923 p. 144.* This was given and he was dispossessed and the store restored in September. The covenant that the building comply with the Tenement-House act was of no greater effect that the usual one with respect to encumbrances. If such covenants can be and are satisfied at the time of the decree there is no breach. The complainant was diligent in removing the objection and the delay was not unreasonable. Under such circumstances performance is timely if conveyance can be made at the time of the decree. *Gerba v. Mitruske, 84 N. J. Eq. 141.*

Decree for complainant.