As early as 1874 our Court of Errors and Appeals in Lounsbery
v. Locander, 25 N.J. Eq. 554, 560, stated that "The construction of contracts is the same in courts of equity as in courts of law. In both forums the one party is entitled *Page 290 
to have, and the other bound to give, precisely what has been contracted for. The mode of procedure may shape the remedy but the end to be attained is the same."
This cause exhibits the familiar post-war scene of a returning veteran seeking to acquire a place of abode in which his re-united family might be privileged to dwell. This complainant, Percy V. Dixon, measured his financial resources and contemplated the probability that the maintenance costs of a one-family residence might overbalance his anticipated current revenues. He accordingly aspired to purchase with his available capital a multiple dwelling house, productive of regular income and in which he and his family could occupy an apartment.
Somewhat opportunely an advertisement glided under his watchful attention which read as follows: "12% Net Profit. Excellent Investment. Apartment house with four 3-room and bath apartments. A-1 location, oil heat. Price $16,000. Annual rent $2,820.00 Apartment now available to new purchaser. Nicholas Friday, 141 Church St. Tel. 2-3203."
That advertisement was indubitably the alluring cause which actuated the complainants to visit the office of the broker and to inspect the premises personally. They observed all of the characteristics and existing appointments and accommodations of the building. It appeared to be an apartment house.
The defendants had through their broker publicly represented the building to contain four rentable apartments and, moreover, the defendants had reported and registered the building with the Office of Price Administration as a structure containing four dwelling units.
On April 25th, 1947, the parties executed a written agreement evidencing the sale of the premises with the furnishings by the defendants to the complainants for the purchase price of $15,300.
The agreement of sale contained the following covenant:
"It is understood and agreed that the buildings upon said premises are all within the boundary lines of the property as described in the deed therefor, and that there are no encroachments thereon and that the buildings comply with municipal ordinances and regulations and *Page 291 
the provisions of the New Jersey State Tenement House Act as enforced by the State Board of Tenement House Supervision, to be shown by the report of the department or board enforcing the same where such ordinances, regulations and said act apply."
In view of the aforementioned covenant, counsel for the complainants, in the observance of his representative duty, addressed an inquiry to the Board of Tenement House Supervision to ascertain whether the premises conformed to the applicable regulations and provisions of the Board. Under date of May 22d 1947, the secretary of the Board of Tenement House Supervision upon inspection of the premises notified the defendants that the building was being occupied as a tenement house in violation of law. A similar report was addressed to the complainants in which the alterations required "to legalize the house as a four apartment tenement" were specifically enumerated.
It is evident that at the time of the inspection of the building by the complainants and of its initial examination by the agent of the Tenement House Board and, indeed, at the time of the execution of the contract of sale, it contained a basement apartment, and also an apartment on each of the first, second, and third floors. Each apartment had a kitchen. The basement, first, and second floor kitchens were each provided with a gas range or stove for cooking purposes. The third-floor apartment was supplied with a cooking implement commonly described as a gas plate.
The statutory definition of a tenement house is "any house or building or portion thereof which is rented, leased, let or hired out to be occupied or is occupied as the home or residence of three families or more living independently of each other and doing their cooking upon the premises." R.S. 55:1-24, N.J.S.A.
In consequence of the aforementioned circumstances the conveyance was not consummated on June 2d 1947, the date designated in the contract for the transference of title.
In Jersey Estates Corp. v. Weintraub, 140 N.J. Eq. 216;53 Atl. Rep. 2d 817, it was held that a provision embodied in a contract for the sale of land that it is understood and agreed that the building upon the premises complies with *Page 292 
the Tenement House Act, is a guaranty by the vendor of the condition of the building or an agreement by him to do whatever may be necessary in order that at the time of passing title the building will meet the requirements of the act. See, too,Merlis v. G. M. Corp., 143 Atl. Rep. 139; Schultz v.Pollock, 102 N.J. Eq. 157; 139 Atl. Rep. 902; affirmed,104 N.J. Eq. 205; 144 Atl. Rep. 920; Moran v. Borrello, 4 N.J. Mis.R. 344; 132 Atl. Rep. 510; Strell v. Zisman, 5 N.J. Mis. R.427; 136 Atl. Rep. 801; affirmed, 103 N.J. Eq. 25;141 Atl. Rep. 921.
An identical covenant in the present contract did not confute the craftiness and dexterity of these defendants. They removed a gas range from one of the apartments and replaced it with a gas plate, caused the premises to be reinspected, and on August 5th, 1947, received a communication from the secretary of the Board of Tenement House Supervision which reads: "In reply to your letter of August 5th, you are advised that a reinspection of the above building shows that it is now arranged for and occupied by only two families doing general cooking. The complaint of illegal occupancy is therefore dismissed."
It is the interpretation of the Tenement House Board that tenants who prepare their heated food on a gas plate are not "doing their cooking on the premises." The stratagem of the defendants was simple and inexpensive, but was it efficacious to liberate them from their contractual obligation to the complainants? I think not. It seems to me to offend common sense to suppose that a vendor who contracts to convey an apartment house constructed and occupied as such can avoid compliance with a covenant of the present import by removing the cooking stoves and ranges from all of the apartments except two and substituting therefor gas or electric plates or waffle irons. Incidentally, the vendors in this cause had agreed that "gas and electric fixtures, gas stoves * * * and all other personal property appurtenant to or used in the operation of said premises * * * is included in this sale." (Italics mine.)
It is rudimentary that contracts must be construed with due respect for the intentions of the parties at the time of *Page 293 
entering into the agreement. The intent, if lucidly expressed and distinctly manifested by the language used in the writing, must be accepted as determinative of the contractual obligation.Williston on Contracts, § 617.
These complainants before entering into the contract precautiously inspected the property, examined and inventoried the contents of each apartment, ascertained the current income from the rental of each, and protected themselves by the covenant of the vendors that the building was in conformity with the tenement house requirements. The defendants acknowledge that the building was then a tenement house, but assert that it is not one now, and they submit the fragile defense that the covenant only obliged them to render the building in a condition in conformity with the tenement house requirements "where such ordinances, regulations and said act apply." Their insistence is that the stove which they had already agreed to sell to the complainants having been removed from the premises, the "regulations and said act" do not apply. That argument is one that Milton might have characterized as a "lickerish bait" but it is not alluring to a court of equity.
The defendants have been persistent in their refusal to make the alterations necessary to meet the tenement house requirements, and the complainants now seek redress in this court in the manner of a directed specific performance of the contract of sale with an equitable abatement of the purchase price.
To grant in the administration of equity a decree to a vendee who at his option desires the performance of a contract for the sale of land with a compensatory abatement of the purchase price for insufficiencies or imperfections in the conveyance is an indubitable power of this court. Lounsbery v. Locander, supra;Borden v. Curtis, 48 N.J. Eq. 120; 21 Atl. Rep. 472; White v.Weaver, 68 N.J. Eq. 644; 61 Atl. Rep. 25; Triplett v. Ivins,93 N.J. Eq. 202; 112 Atl. Rep. 509; Levine v. LafayetteBuilding Corp., 103 N.J. Eq. 121, 141; 142 Atl. Rep. 441;
reversed on other grounds, 105 N.J. Eq. 532; 148 Atl. Rep. 772;Story Eq. Jur., § 779.
The exercise of that power is warranted in the present *Page 294 
cause. The amount which should be allowed by way of deduction from the purchase price was also submitted to me for determination upon the pertinent evidence adduced at the final hearing. No reference to a master for investigation was requested. The proof on this branch of the cause, uncontroverted by any divergent evidence adduced by the defendants, leaves me only to conclude that the amount of the abatement of the purchase price should be in the sum of $2,042.24.
A decree in accordance with these conclusions will be advised.