Melick v. Dayton.

*Decree unanimously affirmed.*

PETER W. MELICK, appellant,

*v.*

CHARLES H. DAYTON, respondent.

CHARLES H. DAYTON, appellant,

*v.*

PETER W. MELICK, respondent.

1. The question of abatement from amount of mortgage, on account of deficiency in contents of the premises, may be raised by the mortgagor in foreclosure proceedings, by answer.

2. If a vendor fraudulently represents the number of acres, and thereby induces the vendee to pay more for the premises than he otherwise would, an abatement will be allowed.

3. There will also be abatement where there is gross mistake.

4. Gross mistake is where the quantity of land conveyed falls so far short of the quantity represented as clearly to warrant the conclusion that the grantee would not have contracted had he known the truth.

5. If the description in the deed calls for "more or less," and the quantity falls short or overruns a little, compensation will not be allowed, in the absence of fraud.

6. Mere enumeration of quantity at the end of a particular description of the premises, where there is no fraud nor gross mistake, is matter of description only, and not of the essence of the contract, and in such case there will not be deduction from the mortgage.

On appeal from a decree of the chancellor, whose opinion is reported in *Dayton v. Melick, 5 Stew. Eq. 570.*

*Mr. John T. Bird,* for Peter W. Melick, cited—

*Bigelow on Fraud 17, and cases cited; Hill* v. *Buckly, 17 Ves. 394; 1 Story's Eq. Jur. 779, and cases cited; Reed* v. *Cramer, 1 Gr. Ch. 277, 286; Couse* v. *Boyles, 3 Gr. Ch. 212, 216, 217, 218; Sugden on Vend. \*370; Shovel* v. *Bogan, 2 Eq. Cas. Abr. 688; Clark* v. *Carpenter, 4 C. E. Gr. 328; Weart* v. *Rose,' 1 C. E. Gr. 290, 297; Belknap* v. *Sealy, 14 N. Y.    ; 1 Story's Eq. Jur. 141; Murdock* v. *Gilchrist, 52 N. Y. 242.*

*Mr. A. A. Clark,* for Charles H. Dayton, cited—

*4 Kent Comm. 467; Mann* v. *Pearson, 2 Johns. 37; 2 Wash. on Real Property ·630; Andrews* v. *Rue, 5 Vr. 402; Weart* v. *Rose, 1 C. E. Gr. 297.*

The opinion of the court was delivered by

PARKER, J.

Charles H. Dayton filed a bill to foreclose a mortgage given him by Peter W. Melick. The bond to secure which the mortgage was given, was for part payment of purchase-money of a mill-seat and tract of land, which Dayton conveyed to Melick.

Melick admits the execution of the bond and mortgage, but alleges he does not owe thereon as large a sum as is demanded in the bill of complaint.

He insists, *first,* that Dayton has not given him credit for all the payments he has made on the bond ; and, *secondly,* that Dayton, at the time of the sale, misrepresented the contents of the tract of land, and he claims abatement from the mortgage equal to the value of the deficiency.

The chancellor did not allow any payments except those endorsed on the bond, and from this part of the decree Melick appeals.

The chancellor found that the premises conveyed contain four and forty-hundredths acres less than Dayton represented the con-

tents to be, and directed the sum of $572 to be deducted from the mortgage as the value of the deficiency in the number of acres:

From this part of the decree Dayton appeals.

The question of alleged payments not credited on the bond, will first be considered.

In his answer, Melick claims but two credits not endorsed, viz., a check for $400 on February 5th, 1869, and a check for $675 on or about April 1st, 1871.

Before Melick can be credited with these amounts, he must prove not only that they were paid, but that they were paid on the bond. This he has failed to do.

Melick paid for the premises, by passing over various securities to Dayton, and it clearly appears from the evidence that, after the assignment of said securities, and the execution of the mortgage in question, there remained due to Dayton $779. For that amount Melick gave Dayton his note. Dayton swears that the check for $400 was paid on that note, and not on the bond, and his statement is corroborated. The bond and mortgage were given on the 17th of December, 1868, one-half payable on the 1st of April, 1870, and the residue on the 1st of April, 1871, with interest from the 1st of April, 1869, and the $400 check is dated the 5th of February, 1869. At the time this check was given, no part of the principal or interest of the mortgage was due. In fact, interest on the mortgage had not commenced to run. A payment made less than two months after the bond and mortgage were given, would undoubtedly be on the note, which was for part of the purchase-money, and therefore should not be credited on the bond.

Nor does the testimony support the allegation of Melick, that the check for $675 of April 1st, 1871, was paid on the bond. It appears that there were other dealings between the parties. Dayton held a bond and mortgage given by one Apgar, which were among the securities assigned to him by Melick in payment for the mill-seat and tract of land. Dayton foreclosed the Apgar mortgage, and at the sheriff's sale Melick purchased part of the premises. Upon settlement of that transaction, a note of Melick

for $430.55 was passed over to Dayton. About the 1st of April, 1871, Melick paid off this note by giving Dayton the check for $675. Dayton gave up the note to Melick, and on the 5th of April, 1871, credited the balance of the check, $246.65, on the bond.

Another credit, not claimed in the answer, is insisted upon by Melick in the testimony. It appears that a check for $185 was given by Melick to Dayton in August, 1870. Of this, Dayton did credit $182 on the bond, but because the amounts of the check and the endorsement on the bond are slightly different, Melick claims credit a second time. The explanation is, that $3 of the check were due Dayton for professional services, leaving the $182 to be endorsed on the bond, which was done.

That all these checks were appropriated as Dayton says, and no further endorsements should be made on the bond, is conclusively demonstrated by what occurred at the interview between the parties on the 27th day of March, 1872. On that day they met at Melick's house. The bond was there, and the endorsements thereon examined. It will be observed that this was long after the date of any of the alleged disputed payments on the bond. On that occasion, Melick did not pretend that he was entitled to any credits on the bond other than those endorsed thereon. It appears that Melick had intended to pay $600 on the bond on that day, but he did pay $634.17. It also appears, from the evidence, that this odd sum was paid, so as to reduce the bond to exactly $4,500, which both parties agreed was then due. And at the end of another year, March 28th, 1873, Melick paid $315, which was the precise amount of interest due on $4,500.

Here was a settlement as to the amount due on the bond, at a time subsequent to the pretended payments not endorsed. If there had been other payments on the bond that should have been credited thereon, would they not then have been claimed by Melick?

He is concluded upon this question by that settlement, and the chancellor did right in not allowing him any payments on the bond except those already endorsed thereon.

Melick v. Dayton.

It remains to consider the claim of Melick for abatement from the mortgage on account of alleged deficiency in the number of acres. He says Dayton represented that the tract contained about ninety-seven acres, when, in fact, the deed conveyed only about eighty-seven acres. The evidence, however, shows that there was a deficiency of only four and forty-hundredths acres, and so the chancellor found.

Should any deduction be made from the mortgage in this case on account of such deficiency? Whatever difficulty there may be in answering this question, arises from the contradictory nature of the testimony, rather than from doubt as to the principles which govern.

Before referring to the evidence, it will be well to state briefly some conclusions which the courts have enunciated on this subject. There is no doubt that the question of abatement can be raised by a mortgagor, by answer in foreclosure proceedings, and under certain states of facts, deduction from the mortgage will be ordered to the extent of the value of the deficiency.

If a vendor *fraudulently* represents the number of acres to be greater than the actual number conveyed, and thereby *induces* the vendee to give more for the tract than he otherwise would, the vendee is entitled to an abatement.

Abatement will also be made where there is *gross mistake.* Gross mistake is where the difference between the actual and the estimated quantity of land represented is so great as to clearly warrant the conclusion that the parties would not have contracted had they known the truth.

The least certain and least material parts of a description must give way to the more certain and material, and the mention of the number of acres after a certain description of the subject by metes and bounds, monuments or possession, is but matter of description, and not of the essence of the contract, and the purchaser takes the risk of quantity, where there is *no fraud* nor *gross mistake.*

If the description calls for so many acres, " more or less," and the quantity falls short or overruns a little, no compensation is to be given either party, where there is not proof of fraud.

Mere enumeration of quantity of land at the end of a particular description of premises by courses, distances, boundaries and monuments, is matter of description only, and is subject to the controlling parts of the description; and if the purchaser has the distinct thing for which he contracted, the court will not interfere, if there be a deficiency in the contents not grossly large, unless there be proof of deception by the vendor. See *Clark* v. *Carpenter, 4 C. E. Gr.328; Crouse* v. *Boyles et al., 3 Gr. Ch. 212; Weart* v. *Rose, 1 C. E. Gr. 290; Andrews* v. *Rue, 5 Vr. 402; 4 Kent Comm. 466; 1 Story's Eq. Jur.* § *141; Mann* v. *Pearson, 2 Johns. 37; 3 Wash. on Real Prop. (3 ed.) *630.*

The above are conclusions arrived at in adjudications on this somewhat vexed question, which should be kept in mind when examining the testimony in the cause now under consideration.

In reading the evidence, the first thing which attracts attention is the *entire absence of proof of fraud* on the part of Mr. Dayton. He represented, as to the quantity of land, only what had been represented to him, and that which he believed to be true.

Nor was there *gross mistake.* The deficiency in a tract of nearly one hundred acres is only four and forty-hundredths of an acre. The evidence does not show that Melick would not have given as much for the tract had he known the true quantity of land. The nature of the property furnishes a strong presumption that he would not have been influenced by a small deficiency in quantity. The premises consisted of a mill and valuable water-power, a large house containing twenty rooms, with furnace, hot and cold water, an extensive lawn in front, and other improvements which made it a desirable country-seat, with about fifty acres of arable land, and the residue low and wet, not fit for the plow. The chief value of the property was in the mill-seat, buildings, improvements and arable land, and a deficiency of a few acres of land which could not be cultivated detracted little, if any, from its value.

Melick knew the premises well, and had resided adjoining them for many years. He knew the proportion of tillable land

as well as Dayton. He was on the premises when the contract was made, and could see what he was purchasing. The description in the deed from Dayton to Melick is by metes and bounds. On almost every course, adjoining tracts are called for. The location of all these tracts was known to Melick. Before the bargain was concluded he went over the premises and noticed the boundaries indicated by fences.

At the end of the description in the deed, the number of acres is given as "more or less." It is clear, from the evidence, that the quantity of land in this case was not of the essence of the contract, but mere description, and governed by the more definite parts of the deed.

It is true that Melick says he bought the property by the acre. This, Dayton denies, and testifies that he sold the premises, not by the acre, but as an entirety, or, as some of the witnesses express it, "in the lump," for the sum of $17,000, and that, while he stated the number of acres as had been told him, no regard was paid to the representation of quantity, but the mill-seat and improvements and tract of land, in their entirety, as known to Melick as well as by himself, were sold for the gross price aforesaid.

Mr. Dayton's testimony on this point is supported, not only by other witnesses, but by circumstances, and his version of the transaction is taken as true. Although Melick knew, soon after the purchase, that the premises fell a little short of the quantity named in the deed, he made no complaint until about the time of the threatened foreclosure.

Melick is not entitled to any deduction from the mortgage on account of deficiency in the quantity of land.

The principal and interest of the bond and mortgage should be paid to Dayton after deducting only the credits endorsed on the bond.

That part of the decree from which Melick appeals is affirmed, with costs.

That part of the decree from which Dayton appeals, is reversed.

For reversal—BEASLEY, C. J., DEPUE, DIXON, PARKER, REED, VAN SYCKEL, COLE, GREEN—8.

For affirmance—DODD, WHITAKER—2.