MYER BERMAN *vs.* WILLIAM ROSENBERG.

Androscoggin.    Opinion April 10, 1916.

*Breach of Contract.  Meeting of minds of parties to contract.*

Action for breach of contract, reported for the determination of this court. *Held:*

1. That the document executed on June 4, 1915, was binding upon the parties thereto, and that the reasons offered to excuse performance on the part of the defendant are not valid. Every reason stated by the defendant was known to him before the first document was written, and from his own testimony these very reasons were the foundation of his dissatisfaction with the plaintiff, and the testimony in support of the plaintiff's contention is overwhelming. The case is one of perfect negotiation resulting in a completed contract on June 4, 1915.

2. That the mere fact that the parties have expressly stipulated that there shall afterwards be a formal agreement prepared, embodying the terms, which shall be signed by the parties, does not by itself show that they continue merely in negotiation. It is a matter to be taken into account in construing the evidence and determining whether the parties have really come to a final agreement, or not. But as soon as the final mutual assent of the parties is established, so that those who draw up the formal agreement have not the power to vary the terms already settled, the contract is completed.

Action on the case to recover damages for the failure of defendant to perform and carry out the terms of an alleged contract entered into by said plaintiff and defendant. Defendant pleaded general issue. At the close of the testimony, the parties agreeing thereto, the case was reported to the Law Court, upon so much of the evidence as is legally admissible, to render judgment as the law and evidence require. Judgment for plaintiff.

The case is stated in the opinion.

*Benjamin L. Berman, and Jacob H. Berman,* for plaintiff.

*Ralph W. Crockett,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHILBROOK, JJ.

HANSON, J. Action for breach of contract, reported for the determination of this court.

The plaintiff and defendant were copartners in the shoe and clothing trade in the city of Lewiston, and began business in February, 1915. The plaintiff was manager of the business. Disagreement arose in relation to the appropriation by the plaintiff of $150 from the partnership funds for the purpose of paying a personal note; and being unable to adjust their difference, the partners talked of dissolving the partnership. In the absence of the plaintiff, the defendant invited Mark Berman, the plaintiff's father, to come to their store, and there discussed with him the affairs of the partnership, with the result that the defendant agreed to a dissolution of the copartnership, and to continue the business, assume its obligations, and pay the plaintiff four hundred dollars for his interest in the firm. The plaintiff later in the day, in the presence of his father, assented to the arrangement so made by his father and the defendant, and on request of the defendant sent for an attorney to come to their store, and, after consultation with all the parties involved, the following agreement was written by the attorney and signed by the parties:

"LEWISTON, ME., June 4, 1915.

Dissolution agreement by and between Myer Berman and William Rosenberg.

(I)   In consideration of $400 My Berman transfers all his right title and interest in the business formerly conducted by them jointly, including book of accounts and stock etc.

(II)   Wm. Rosenberg is to assume all outstanding indebtedness and to save the said Berman harmless by reason thereof.

(III)   William Rosenberg is to collect all outstanding bills owing to said firm at his own expense and for his benefit.

(IIII)   Said consideration of $400.00 to be in full satisfaction of all claims and demands which the said Rosenberg has against the said Berman.

WM ROSENBERG<br>MYER BERMAN."

The above document, which was written at the store on the firm's letter-head, was retained by the attorney and taken to his office for the purpose, as the plaintiff claims, of making a copy of the same for the use of one of the parties, while the first copy would be kept by the other, or a copy, for the use of each; that the document represented and included all that was agreed to, and was the completed contract between the parties.

The defendant denies this, and says that the agreement was not completed on June 4th, and never was perfected; that the first paper was a memorandum merely from which the contract was to be drawn, and he says that the attorney remarked: "I am going to scribble it off here, it is only a temporary agreement, a temporary paper. I will make the real papers out tomorrow," and continues:

"Q.   What was said about the paper he was going to draw the next day?

A.   Well, it was stated that the paper that was going to be drawn the next day is going to be a binding paper. This is only a temporary agreement.

Q.   Was anything said about your having a chance to look over the paper that was to be made the next day?

A.   Yes, sir.

Q.   What was said about that?

A.   Well, after I am satisfied with the papers that I could sign it."

The attorney prepared the following document:

"KNOW ALL MEN BY THESE PRESENTS THAT WILLIAM ROSENBERG, OF LISBON FALLS, IN THE COUNTY OF ANDROSCOGGIN, AND MYER BERMAN, OF LEWISTON, IN SAID COUNTY, AGREE AS FOLLOWS :—

1.   The partnership existing between the said parties under the firm name of MYER BERMAN & Co., is hereby dissolved by mutual consent.   Said MYER BERMAN in consideration of FOUR HUNDRED DOLLARS ($400.00) paid to him by the said WILLIAM ROSENBERG, grants and assigns to the said WILLIAM ROSENBERG, all his right, title and interest in and to all the goods, stock, fixtures and good will of said firm, and in all the debts, demands and accounts, due said firm, with full power to the said WILLIAM ROSENBERG, to collect the same by suit, or otherwise, in the name of said firm, for his own use and benefit, but without expense to the said MYER BERMAN.

2.   The said MYER BERMAN agrees that he will not do any act by which the said WILLIAM ROSENBERG may be delayed or hindered from collecting any of said debts or demands, and that he will, at any time, on request, execute any proper instrument and give any information for enabling the said WILLIAM ROSENBERG to collect the same.

3.   The said WILLIAM ROSENBERG agrees to pay all the debts and demands existing against said firm, and to indemnify and to save the said MYER BERMAN harmless from all loss, damage or expense, to which he may be subjected by reason of the same.

4.   It is hereby agreed by and between the parties hereto, that the said consideration of FOUR HUNDRED DOLLARS ($400.00) is in full satisfaction of whatever claim or demand the said WILLIAM ROSENBERG has, or might have against the said MYER BERMAN, arising out of the business formerly conducted by them jointly.

5.   It is hereby further agreed by and between the aforementioned parties that the said WILLIAM ROSENBERG shall not be holden for any account contracted by the said MYER BERMAN in his private capacity and for his personal interest.

WITNESS OUR HANDS AND SEALS, THIS FIFTH DAY OF JUNE, A. D., NINETEEN HUNDRED AND FIFTEEN.

SIGNED AND SEALED

IN THE PRESENCE OF

........................          ....................(SEAL)

.........................          ....................(SEAL)"

The defendant in his direct examination says simply that he declined to sign the new draft, without stating any reason, but on cross-examination says, "I told him he didn't deserve it, the whole transaction between him and I; he miscalculated the whole affair. He did business with mismanage, and I am the loser of about $2,000 in this affair, and I thought myself I hadn't ought to pay another cent. In fact he ought to pay for the damages himself."

"Q. That was the reason you didn't sign the draft in the morning?

A. That is one of the reasons. Then I got this check here, which he drew in the bank. He had no business to do that.

Q. That was a reason, too?

A. That is another reason. I thought I was losing enough without paying any more money.

Q. Did you offer Mr. Berman $225?

A. I thought I would do it rather than go to law about it. It is a disgraceful affair anyway to me. . . . so I thought I rather pay him less to get rid of him."

At the trial the defendant's counsel contended (1) that neither party was bound by the terms of the contract, and (2) that "the defendant was excused from performing because the plaintiff had drawn out money he had not accounted for."

From a careful reading and consideration of the testimony, we are of the opinion that the document executed on June 4, 1915, was binding upon the parties thereto, and that the reasons offered to excuse performance on the part of the defendant are not valid. Every reason stated by the defendant was known to him before the first document was written, and from his own testimony these very reasons were at the foundation of his dissatisfaction with the plaintiff, and the testimony in support of the plaintiff's contention is overwhelming. The case is one of perfect negotiation resulting in a completed contract on June 4, 1915. Both counsel cite and rely upon *Steamship Co.* v. *Swift*, 86 Maine, 248. The rules laid down in that case are universal, and its doctrine is controlling in the case at bar. These parties arrived at a point when they could no longer do business together. They desired to separate, and after agreeing between themselves, they sent for an attorney, whose

services at their conference resulted in an agreement in writing which both parties signed, and which from the testimony embodied just what both parties wanted to do, and what their deliberate intentions were. Nothing can be plainer than the statements made by the writer; nothing simpler or more single in purpose, and withal there is no suggestion of ambiguity. These parties desired to dissolve their relation as copartners. The agreement provided for that, and for payment of $400 to the retiring partner, and the usual stipulation as to collection of debts and paying liabilities. That is all. If, as the defendant claims, the document of June 4, 1915, was not a contract, because the last was to be effective if satisfactory to him, what is there in the last one to justify his refusal to sign? If not satisfactory to him, why not? A comparison of the documents shows that the attorney made a longer document, using more words to express his meaning, but to all intents and purposes covering the same ground as the first down to the last clause, with which the parties having signed the first must necessarily be satisfied. The attorney added paragraph 5, which makes a provision not in the first document, and so manifestly in the interest of the defendant that the conclusion is irresistible that the defendant, having signed the first, had no reasonable excuse for refusing to sign the latter. There was a contract made on June 4, 1915. The minds of the parties met, and, although the document was written hastily, outside the office of the attorney, yet it expresses all that they desired to do, and they signed it. If it were not their intention to be bound by it, why did they sign it? The evidence does not furnish any reason to assail the validity of the first mentioned agreement.

In *Steamship Company* v. *Swift*, 86 Maine, 248, cited by both parties, a different state of facts is presented. There the parties were in correspondence for nearly a year in relation to a certain space on three steamboats, to be fitted with refrigerators and used by the defendants for shipping meat. The plaintiff claimed that the contract was completed in April, 1890. The defendants denied that any contract was made or signed. The case shows that after prolonged correspondence and many delays and requests for a contract, the plaintiff finally sent a form of contract which was not

signed. In finding for the defendant, the court say: "The case is by no means free from doubt and difficulty, but due reflection and study of the evidence have at the last brought us to the conclusion, that what the plaintiff claims to have become a perfected contract on April 5, 1890, by the defendant's letter of that date, was at the most only the acceptance of the proposed basis of a contract, which was yet to be perfected as to details, and put in writing; and that the defendants did not have, nor signify, any intention to be bound until the written draft had been made and signed."

It was further held, "that if the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiations, there is no contract until the written draft is finally signed." Both rules are then emphasized and illustrated, and the decision is a leading authority, widely cited.

It is settled that the mere fact that the parties have expressly stipulated that there shall afterwards be a formal agreement prepared, embodying the terms, which shall be signed by the parties, does not by itself show that they continue merely in negotiation. It is a matter to be taken into account in construing the evidence and determining whether the parties have really come to a final agreement, or not. But as soon as the final mutual assent of the parties is established, so that those who draw up the formal agreement have not the power to vary the terms already settled, the contract is completed. 6 R. C. L., 619.

These authorities hold that the burden of proof is on the party claiming that the contract was completed before the draft was signed; and the authority last cited holds, too, that, if the parties act under the preliminary agreement, or receive benefits thereunder they will be held bound notwithstanding the fact that a formal contract has never been executed. Idem, 620, citing 29 L. R. A., 436, note; *Sanders* v. *Pattlitzer Brothers Fruit Co.,* 144 N. Y., 209. See *Miller* v. *McManus,* 57 Ill., 127.

It is settled that the fact that parties negotiating a contract contemplate that a formal agreement shall be made and signed is some evidence that they do not intend to bind themselves until the agree-

ment is reduced to writing and signed. But, nevertheless, it is always a question of fact, depending upon the circumstances of the particular case, whether the parties had not completed their negotiations and concluded a contract definitely complete in all its terms which they intended should be binding upon them, and which for greater certainty, or to answer some requirement of the law, they designed to have expressed in a formal written agreement. *Wharton* v. *Stoutenburg,* 35 N. J. Eq., 266.

There is conflict as to the real purpose of making another draft of the agreement on the following day, but no suggestion was made by either party that there was to be a change in the stipulations. A careful reading of the testimony leads to the conclusion that the suggestion of making another, or more formal draft of the agreement came from the attorney, for his own purposes or convenience, on his own motion, without protest from the parties, or expectation on their part that the agreement so made should be changed.

The entry will be,

*Judgment for plaintiff.*