Complainant, as vendee, sues for specific performance of an alleged contract relating to lands situate in the borough of Rockleigh, Bergen county, New Jersey, with abatement in the purchase price, such abatement to be fixed by the court, and tenders himself ready and willing and offers to specifically perform on his part, with abatement of the purchase price for such deficiency in the quantum of lands mentioned in the contract and that which the defendant can convey. The proofs show that one Tait, on August 10th, 1925, contracted to sell to the defendant the property in question. The alleged contract between complainant and defendant, dated August 21st, 1925, and bearing the caption "Agreement of Sale," recites that the defendant received from the complainant the sum of $1,000 "as part payment for purchase of property known as the Tait property located on the west side of Tenafly road, in the borough of Rockleigh, consisting of one hundred and ninety-five acres, more or less, being the same parcel now under contract to Lafayette Building Corporation," at a price of $117,000 on the following terms:
"Formal contract to be signed on or before September 1st, 1925. Additional money to be paid on signing of formal contract four thousand [$4,000] dollars. Title to be closed on October 20th, 1925. Additional money to be paid on closing title — twenty thousand [$20,000] dollars. Subject to a first mortgage of seventy thousand [$70,000] dollars. Terms of first mortgage to be stated in contract — term five years. A purchase-money mortgage — twenty-two thousand [$22,000] dollars. Terms of second mortgage — proportionate with first mortgage. Subject to assessment of — none. Subject to restrictions of record if any — none. Taxes, interest on mortgage, insurance premium to be adjusted as of October 20th, 1925. This property is sold at the above-mentioned price and terms, subject to the acceptance of the owner."
That the defendant, as owner, agreed to the sale of the property at the above-mentioned price and terms, which were subject *Page 125 
to acceptance of the defendant, is indicated by a writing at the bottom of the aforesaid "Agreement of Sale" which reads (omitting herein, as surplusage, the word "to" preceding the word "property" therein):
"I agree to accept the above-mentioned price and terms for the sale of my property.
 LAFAYETTE BUILDING CORP., DAVID COHEN, Pres., FRANK E. SMITH, Secy.
[SEAL] _________________________ Witness."
The defendant upon contracting for the purchase of the property from Tait received from him a map of said property, made by Tait's engineer, which showed the tract of lands to be one hundred and ninety-five and twenty-five hundredths acres. The proofs disclose quite a variance between the testimony of the witnesses for the respective parties as to whether there was exhibited to the complainant, prior to the signing of the "Agreement of Sale," the above-mentioned Tait map. In view thereof I consider that I should regard the averment in the complainant's bill that "there was exhibited to complainant by defendant at the time the complainant entered into said contract a map of said property, on which the several parcels of said real estate were delineated, and on which the acreage of which said parcels was marked, the total acreage of all of said parcels being one hundred and ninety-five and twenty-five hundredths acres," as the fact. It appears that the complainant, several days after the signing of said paper, requested the defendant to obtain and furnish to him additional copies of the Tait map, and the defendant's secretary about a week or ten days thereafter furnished to the complainant several purported copies of the Tait map, which showed a tract of lands covering an area of one hundred and fifty-two and sixty-one hundredths acres. The complainant, immediately upon observing the variance in quantity of lands shown by the respective maps, made complaint thereof to the defendant's secretary, Mr. Smith, who testified that the complainant "was very much excited." Apparently, as a result *Page 126 
of the complainant's complaint to the defendant's officers, Messrs. Corn and Smith, of the shortage of approximately forty-two acres, indicated by a comparison of the "Tait map" exhibited to the complainant at the time of the purchase, and the several copies of maps furnished by the defendant to the complainant subsequent thereto, a suit was shortly thereafter instituted in this court by the defendant against Tait for specific performance of the contract entered into between said parties on August 10th, 1925, with claim for abatement of the purchase price because of deficiency in quantum of the tract of lands which was the subject-matter of their contract. The claim of the Lafayette Building Corporation against Tait for abatement was denied, and said corporation was given the option of a dismissal of its bill of complaint or taking a deed from Tait for one hundred and fifty-two and sixty-one hundredths acres at the full price mentioned in their contract. Lafayette BuildingCorp. v. Tait, 100 N.J. Eq. 73. The determination of the court in said suit was based on the testimony of Tait and his witnesses, whom the court apparently believed, that Tait, in his negotiations with the Layayette Building Corporation, specifically insisted that the sale was to be of the tract in question regardless of area. The de-defendant elected to take such deed from Tait, and in part payment of the purchase price gave him a purchase-money mortgage for $70,000. The complainant herein, anticipating that the defendant could not convey to him "one hundred and ninety-five acres more or less," as stated in the "Agreement of Sale" of August 21st, 1925, signified his willingness to accept a deed of conveyance for the quantum of the property which the defendant could convey, upon being allowed an abatement of the purchase price for the difference between the number of acres which the defendant could convey (one hundred and fifty-two and sixty-one hundredths acres) and the number of acres mentioned in the "Agreement of Sale" (one hundred and ninety-five acres), i.e., forty-two and thirty-nine hundredths acres. The only disputed question of fact arising out of the testimony in the case sub judice, and such is conceded in the memorandum submitted to the court by counsel for the defendant, is as to whether the tract of lands which *Page 127 
is the subject-matter of the controversy between the parties to this suit was sold for a lump sum of $117,000, irrespective of the number of acres in the tract, or whether it was sold on a basis of $600 per acre. The negotiations between the parties preceding the execution and delivery of the "Agreement of Sale" as evidenced by the testimony, manifests, in my judgment, that the complainant purchased the property on a per acre basis at the rate of $600 per acre, and on the representation of the defendant's president and secretary, fortified by their exhibition to the complainant at or before the signing of such "Agreement of Sale," that the tract of lands for which the parties were negotiating comprised approximately one hundred and ninety-five acres. That such is the fact is indicated also when it is considered that the stated number of acres, multiplied by the aforesaid rate of $600 per acre, gives $117,000, the purchase price agreed upon. It is urged in behalf of the defendant that the paper-writing in question evidences an incomplete preliminary agreement, and reference is made to a recital therein as follows: "Formal contract to be signed on or before September 1st, 1925, * * *. Terms of mortgage to be stated in contract — term five years," and the defendant claims that the only possible meaning to be deduced from such recital is that the parties in signing said paper deliberately left the terms of the first mortgage open, to be settled by further treaty, and to be set forth in aformal contract. The defendant urges, also, that said paper-writing evidences, on its face, that certain important matters were left open for future negotiation and settlement by aformal agreement, stressing as a point in this regard that notwithstanding the "Agreement of Sale" recites payment of $1,000 as part of the purchase price, it requires "additional money to be paid on signing of formal contract four thousand [$4,000] dollars." The proofs disclose that the complainant made a further payment of $4,000 to the defendant on September 1st, 1925, although no formal contract or other paper was signed by the parties subsequent to August 21st, 1925. If, as urged by the defendant, the transaction between the parties was a preliminary agreement which was not to be regarded as concluded until aformal contract was signed on *Page 128 
or before September 1st, 1925, at which time an additional sum of $4,000 was to be paid by the complainant to the defendant, the defendant, by accepting from the complainant a further benefit thereunder, to wit, the additional money — $4,000, clearly, in my judgment, waived the "signing of formal contract." The fact of such payment of "additional money" by the complainant, and acceptance thereof by the defendant eleven days after the alleged preliminary agreement was signed, is strongly indicative that the parties relied upon such alleged preliminary agreement, to wit, the "Agreement of Sale," as a binding agreement between them, and the fact that said paper-writing bears the caption "Agreement of Sale," and expressly says: "This property is sold at the above-mentioned price and terms, subject to the acceptance of the owner," and that the owner's acceptance set out at the bottom of the instrument referring, as it does, to the sale of the property on "the above-mentioned price and terms," is momentous in determining the intent of the parties. It cannot reasonably be urged that the defendant, having accepted a further payment of $4,000 as "additional money" thereunder, notwithstanding no formal contract was signed by the parties, did not thereby explicitly manifest that it relied upon the "Agreement of Sale" as a binding agreement. Furthermore, the defendant thereby further manifested, in my judgment, that it adopted such "Agreement of Sale" as the binding contract of the parties in lieu of any further writing or "formal contract to be signed." Berman v. Rosenberg (Me.), 97 Atl. Rep. 6, 8,
citing 29 L.R.A. 436 note; Sanders v. Pottlitzer Bros. FruitCo., 144 N.Y. 209, and Wharton v. Stoutenburgh, 35 N.J. Eq. 266.
The fact that the paper-writing in question contains the words "formal contract to be signed * * *," though significant, is not conclusive that it was not intended to be a binding agreement. It is no more conclusive than is the caption of said paper-writing, which explicitly reads, "Agreement of Sale," or the words, "this property is sold at the above-mentioned price and terms, subject to the acceptance of the owner," or to the word sale in the owner's acceptance clause set out at the bottom of said paper-writing, all of which collocation of words *Page 129 
are very significant, and may properly be regarded as evidential in ascertaining the intent of the parties. In Wharton v.Stoutenburgh, supra, the court of errors and appeals held that the fact that parties negotiating a contract contemplated that a formal agreement should be prepared and signed, is someevidence that they did not intend to bind themselves until the agreement was reduced to writing and signed, but, nevertheless,it is always a question of fact, depending upon the circumstancesof the particular case, whether the parties had not completedtheir negotiations and concluded a contract definite and completein all its terms, which they intended should be binding uponthem, and which, for greater certainty, or to answer somerequirement of the law, they designed to have expressed in someformal written agreement. (Italics mine.) Such decision has never been criticised or modified in any of the numerous cases which have since come before the court, and each of such cases
has been decided upon the particular facts of the case. In 13Corp. Jur. 290, 291, 292 § 100, it is said: "If, therefore, it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of the contract are in all respects definitely understood and agreed on, and that a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, this is an obligatory agreement, which dates from the making of the oral agreement and not from the date of the subsequent writing" * * *. And p. 292: "Where the contract is already in writing, it is none the less obligatory on both parties because they intend that it shall be put into another form." * * * In Garrick Theatre Co. v. Gimbel Bros.,158 Wis. 949, 656; 149 N.W. Rep. 385 (at p. 388), it is said: "The question whether an informal arrangement is intended by the parties to form a contract in and of itself, or is only a step in the negotiations leading up to a binding contract, is not always easy of solution. The law undoubtedly is that an informal agreement complete in all its terms will take effect if the parties so intend, though a more formal contract is expected to be afterwards made, provided that the formal contract is not to contain material provisions *Page 130 
not contained in or to be inferred from the preliminary informal agreement."
The proofs in the case sub judice do not disclose that any material provisions were to be inserted in the "formal contract to be signed," which were not contained in or to be inferred from the paper-writing of August 21st, 1925, characterized by counsel for the defendant as a preliminary informal agreement.
Of course, if it be reasonably doubtful whether a contract was completed equity will not interfere by decreeing specific performance. Nor will equity interfere when the evidence leaves the agreement as to any of its essential terms in uncertainty.Brown v. Brown, 33 N.J. Eq. 650, 657. The mere fact, however, that the parties have expressly stipulated that there shall afterwards be a formal agreement prepared (embodying the terms already agreed upon) which shall be signed by the parties, does not by itself show that they continue merely in negotiation. It is, of course, a matter to be taken into account by the court in construing the evidence and determining whether the parties have really come to a final agreement or not, but as soon as the fact of the final mutual assent of the parties is established, so that those who draw up the formal agreement have not the power to vary the terms already settled, the contract must be regarded as completed. 6 R.C.L. 619; see, also, Berman v. Rosenberg,supra (at p. 8). And if the parties act under the preliminary agreement and receive benefits thereunder they will be held bound notwithstanding the fact that a formal contract has never been executed. 6 R.C.L. 619, 620, citing 29 L.R.A. 26, note. It is clearly established in the case sub judice that the defendant accepted a benefit, to wit, an additional payment of $4,000 under the "Agreement of Sale" aforesaid, a considerable time after the execution and delivery of such instrument, and it must therefore be considered as having relied upon said writing as a binding agreement.
In Williston Con. p. 36 § 28, it is said:
"The distinction between preliminary negotiations and completed contracts is often involved in cases where the parties contemplate the execution of a written agreement. It is everywhere agreed to be *Page 131 
possible for parties to enter into a binding informal or oral agreement to execute a written contract. It is also everywhere agreed that if the parties contemplate a reduction to writing of their agreement before it can be considered complete, there is no contract until the writing is signed. But between these two clear situations, ambiguous ones arise as to which there is a difference. On the one hand it has been said by the New York court of appeals: `Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed.' And, on the other hand, it has been said by the New Jersey supreme court: `If it appears that the parties, although they have agreed on all the terms of their contract, mean to have them reduced to writing and signed before the bargain shall be considered as complete, neither party will be bound until that is done, solong as the contract remains without any acts done under it oneither side.' [Italics mine.] This leaves open the question, how it is to be known that parties who mean to reduce it to writing mean that until then the contract shall not be `considered as complete.' Under both these statements the ultimate question is one of fact as to the intention of the parties, * * *."
The New Jersey case above referred to is that of Donnelly v.Currie Hardware Co., 66 N.J. Law 388. Since said decision our supreme court decided the case of Trenton and Mercer CountyTraction Corp. v. Trenton, 90 N.J. Law 378, wherein (at p.381) it is said:
"It is argued that the parties did not intend that there should be a complete contract until the written agreement was executed. * * * As Lord Cransworth said in Ridgeway v. Wharton, 6 H.L.Cas. 238 (at p. 268), the fact `the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the previous negotiations to amount to an agreement;' but at the same time he protested against its being supposed because persons wish to have a formal agreement drawn up that therefore they cannot be bound by a previous agreement if it is clear that such an agreement had been made; and he expressed his approval of Sir William Grant's decision in the leading case of Fowle v. Freeman, 9 Ves. Jr. 351."
Defendant's counsel objected to complainant's witnesses testifying to statements made by a representative of the defendant *Page 132 
who effected the sale of the property to which the paper-writing in question relates, as to certain matters discussed during the negotiation which are not set forth in such paper-writing. The purpose of such testimony was to show that said paper-writing was intended by the parties to be a binding agreement, and for such purpose the testimony was admitted, in order to apply the reasoning of the court in Wharton v. Stoutenburgh, supra.
While it is elementary that parol evidence is not, in general, admissible between the parties to vary a written instrument, nevertheless, it is well settled that mistake, fraud, surprise or accident furnish exceptions to this doctrine. 2 Pom. Eq. Jur.
(4th ed.) § 858. In Morgan Realty Co. v. Pazen, 102 N.J. Eq. 33,
I determined, upon consideration of parol testimony, that the paper-writing which was the subject-matter of the controversy in said case was intended to be merely preliminary to a formal agreement thereafter to be entered into between the parties. I considered that the admission of parol testimony was proper for the purpose of determining whether such paper-writing was intended to evidence a completed bargain, inasmuch as it contained matter which might reasonably be regarded as indicative of its not being a completed bargain, particularly in so far as it indicated that certain terms were left indefinite, and designedly so, because of necessity and circumstances as to which the parties were not then definitely informed. The parol evidence admitted in behalf of the complainant in the case sub judice
was ostensibly for the purpose of showing that the defendant was purchasing from one Tait, subject to a first mortgage of $70,000, the property which the defendant contracted by the aforesaid "Agreement of Sale" to sell to the complainant, and that while such first mortgage was to run for a term of five years, there were other terms of said mortgage which might not have been agreed upon between the defendant and Tait; and that the purpose of the parties in inserting in the paper-writing sub judice the provision that the terms of the first mortgage were to be stated in the contract, was that the terms of such mortgage were to be such as agreed upon in the meantime between the defendant and Tait. That parol evidence is admissible in cases such as the onesub *Page 133 judice is indicated by numerous authorities, among which may be mentioned 2 Pom. Eq. Jur. (4th ed.) § 858; Moore v.Galupo, 65 N.J. Eq. 194 (at p. 206); Wharton v.Stoutenburgh, supra; Trenton and Mercer County Traction Corp.
v. Trenton, supra; affirmed, 91 N.J. Law 719; Kuskin v.Guttman, 98 N.J. Eq. 617; affirmed, 99 N.J. Eq. 887 (which involved a paper-writing in the nature of a receipt, which provided "balance on bond and mortgage, as per agreement of sale to be drawn on August 13th, 1925, subject to approval of purchaser"); Venino v. Naegele, 99 N.J. Eq. 183; affirmed,100 N.J. Eq. 357 (wherein it appeared that the paper-writing relied on was in the nature of a receipt reciting "contract to be drawn up and signed within the next few days," which manifests that the parties had not intended by such receipt to make a contract); Berman v. Rosenberg, supra (wherein it appears that the court from a reading and consideration of thetestimony was of the opinion that the paper-writing in question was binding upon the parties); Hobelman v. Cavallo, 102 N.J. Eq. 243
(wherein it appeared that the paper-writing in question was a receipt, which, on its face, manifested that it was preliminary and not final); Schneider v. Crawford, 99 N.J. Eq. 249
(wherein it appeared that the paper-writing in question was in the nature of a receipt, which, on its face, manifested that it was preliminary and not final, and clearly evidenced that there were terms left open for negotiation and agreement, and recited "regular agreement of this sale to be drawn and signed by both parties hereto at any time before October 1st, 1925," and reciting also that the vendor was to "take back second mortgage for balance due," thereby clearly indicating that there was a first mortgage, the amount of which not stated, to which the second mortgage would be subordinate as a lien, the amount of the second mortgage therefore being an indefinite item and undetermined between the parties).
In Wharton v. Stoutenburgh, supra, it was held that a final agreement had been reached, although the parties intended that a lease embodying the agreement should be executed * * *. The case of Tansey v. Suckoneck, 98 N.J. Eq. 669, relied upon by the defendant, is not analogous to the case sub *Page 134 judice. In said case there was nothing but a mere receipt of a most informal nature, reading as follows:
"Received, Newark, N.J., Tuesday, October 28th, 1924, from Heime Suckoneck, two hundred and fifty dollars on account of purchase price 100 x 100 s.w. corner Miller street and Avenue C, Newark, for $10,000, formal agreement to be executed and additional amount paid on November 7th, 1924; title to be taken as soon as searches are made. $5,000 cash and $5,000 mortgage. H. Suckoneck. $250 Michael J. Tansey."
It will be readily observed that the receipt fails to disclose how much additional amount was to be paid on November 7th, 1924, and what all the terms of the formal agreement were to be. The court, in its decision, says:
"The basis for decision in the present case is that the paper is, on its face, preliminary and not final, and by its very language indicates that other features left unsettled are to be settled by further negotiations * * *."
The court did not hold that the mere fact that the receipt stated that a formal agreement was to be executed was sufficientin and of itself to indicate that the parties did not intend to be bound by such receipt. Furthermore, it does not appear that the bill of complaint in said case contained, as it does in the case sub judice, allegations to the effect that the parties intended to be bound by the paper-writing in question, and that a formal agreement was to be executed only for the purpose of putting the agreement of the parties in more formal shape. (See amended bill of complaint.) In the case sub judice the paper-writing, which bears the caption "Agreement of Sale," purports, upon its face, to provide for all the terms and conditions which are ordinarily provided for in contracts for sales of realty. It provides for the sales price, describes the property, recites "on the following terms" for the additional money to be paid, for the date of closing title, for the amount to be paid in cash and the amount to be represented by mortgage, for the term of the first mortgage and the term of the second mortgage; that taxes, interest on mortgage and insurance premiums be adjusted as of October 20th, 1925, and that the title is not to be subject to any assessments or restrictions of record. It evidences also that the property *Page 135 
was sold for the price and terms mentioned therein, and that the defendant agreed to accept the price and terms mentioned for the sale of the property to the complainant. (See vendor's acceptance clause on paper-writing.)
In Venino v. Naegele, supra, the court took proofs and therefrom determined that it was not the intent of the parties to be bound by such receipt. No such argument can be reasonably urged as to the case sub judice where the words of the "Agreement of Sale" are "formal contract to be signed * * *." The use of the word "formal" as a prefix to the word "contract" signifies that the parties had contracted, and merely intended that their contract should be manifested by a more formal
instrument. As mentioned hereinabove, the defendant clearly manifested that it regarded the paper-writing in question as a binding contract, not only by accepting from the complainant weeks after the execution and delivery of said writing a payment of $4,000, which was additional to the sum of $1,000 paid upon the signing and delivery of said paper, but also by itsacceptance aforesaid for sale of the property at the price and terms mentioned in the instrument. The case of Kuskin v.Guttman, supra, also cited by counsel for the defendant, is clearly distinguishable from the case sub judice. In said case the bill of complaint did not allege, as it does in the case subjudice, that the parties intended to be bound by the paper-writing in question, and that a formal agreement was to be executed only for the purpose of putting the agreement of the parties in more formal shape. It is apparent that the receipt relied upon in that case did not evidence a contract between the parties, and that the parties did not intend to be bound thereby, because such receipt expressly stated that the "agreement of sale to be drawn" was to be "subject to approval of purchaser." Other cases cited by counsel for the defendant are of like import, as the cases of Tansey v. Suckoneck, Venino v. Naegele andKuskin v. Guttman. None of the numerous cases which have come before our courts were based upon a written instrument such as the one in the case sub judice. This case is clearly distinguishable from the case of Lafayette Building Corporation
v. Tait, supra. In that case Tait contended that the contract *Page 136 
was for the sale of a tract of land regardless of acreage. The Lafayette Building Corporation claimed that a map exhibited to its representative by Tait, which showed a tract one hundred and ninety-five and twenty-five hundredths acres, was the determining feature. Vice Chancellor Lewis said:
"Upon the making of the final contract with the complainant, for whom Frank E. Smith, Incorporated, appears to have acted as agent, it was specifically insisted in behalf of the defendant that the sale was to be of the tract in question, as located on the westerly side of the Carteret road, regardless of area, and specific acreage was therefore not included in the contract, except by a reference thereto with the customary qualification of its being "more or less." I am satisfied from the proofs presented that such was the contract, and under the circumstances there can be no abatement in the purchase price. I am therefore constrained to advise a decree for specific performance in accordance with strict terms of the agreement of August 10th, 1925."
Holding, as I do, that the parties intended to make a binding contract, the "Agreement of Sale" aforesaid, executed by the defendant, even though signed by the defendant only (a counterpart thereof was signed by the complainant only and delivered to the defendant), complies with the provisions of the statute of frauds. In Kamens v. Anderson, 99 N.J. Eq. 490,
Vice-Chancellor Leaming (on motion to strike bill) held:
"Our statute of frauds does not require a contract for the sale of real estate to be signed by both parties to the contract. The requirement is that it `shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.' The great weight of authority is to the effect that the phrase, `party to be charged,' means the party sued, and that the signature of the other party is not essential * * *." And (at p. 492): "So far as mutuality of obligation of performance is concerned that requirement was fully met when the vendee specified in the body of the contract filed his bill herein. Cohen v. Pool, 84 N.J. Eq. 77; affirmed,Ibid. 189. Prior cases in this state to that effect are collected in Pom. Spec. Perf. Con. (3d ed.) note "A" to §170." *Page 137 
If the terms of credit to be given to a vendee may be regarded as uncertain, the vendee may, as he offers to do in the case subjudice, waive all credit and pay cash, if the pleadings are so framed. See Binns v. Smith, 93 N.J. Eq. 33, wherein Vice-Chancellor Leaming says:
"The terms of the contract now sought to be enforced clearly disclose that the purchase-money mortgage was to be an extension of credit to the purchaser; the contemplated installment payments fully disclose that the time of payment was to be postponed. In such circumstances it has been held to be the privilege of complainant to waive the credit and tender cash or a mortgage payable on demand. But the pleadings herein do not present any issue on that question."
The vice-chancellor denied specific performance in the case cited upon the ground that the complainant did not waive the credit. In the case sub judice the complainant waives the credit intended by the second mortgage and offers to pay cash instead, and take the property subject to the first mortgage lien subject to which the defendant acquired the property.
Complainant urges that he is entitled to abatement because of the inability of the defendant to convey to him the quantity of acreage stated in the "Agreement of Sale" aforesaid. In this respect it is pertinent to inquire as to how the purchase price was arrived at. The testimony of complainant's witnesses manifests that the complainant, in negotiating with the representatives of the defendant, among whom were David Corn, president of the defendant corporation, mentioned a purchase price per acre. It appears from their testimony that the defendant's representatives asked of the complainant the sum of $600 per acre, and when asked whether the sum of $575 per acre would be accepted were informed that a Mr. Smith was interested in the purchase of the property, from whom the sum of $600 per acre could be obtained, but a preference would be given to the complainant, and, finally, the complainant decided to purchase the property at $600 per acre. The defendant's witnesses testified that in the negotiations for the sale of the property a gross price of $125,000 was asked in the first instance, that the complainant made a counter offer of $110,000, and, finally, the parties agreed *Page 138 
upon a purchase price of $117,000. Mr. Corn, the president of the defendant corporation, who was a party to the negotiations, in reply to several questions propounded to him, stated that the sum of $600 per acre was not mentioned by him or any of his associates to Mr. Levine, but, on cross-examination, he qualified the effect of his denial by saying he had no recollection of such offer. In my judgment it cannot reasonably be urged that thequantum of property which was the subject of negotiation between the parties could be regarded as of no significance. It is reasonable to consider, particularly in these times when there has been so much dealing in realty matters, that the greater the acreage the greater value it should be to the owner. In this connection it must be considered, as against the defendant, that in its aforesaid suit against Tait the defendant itself sought abatement upon the ground that in the contract between Tait, as vendor, and the defendant, as vendee, the defendant contracted to purchase one hundred and ninety-five acres, more or less. The fact that the court decided against the defendant in its aforesaid suit against Tait can avail it nothing in the suit subjudice. The defendant cannot urge as against the complainant herein the matters urged against it by Tait, particularly in view of the testimony of its witnesses in that case indicating that the quantum of acreage was momentous. In the Tait Case the witnesses for the complainant therein (the defendant herein) testified that the quantum of acreage was the determining feature in the fixing of the purchase price as between said complainant and Tait. The defendant herein reverses the position taken by it in the Tait suit, and now claims that the purchase price between complainant and defendant in the suit sub judice
was not based upon the quantum of acreage, but as an entire tract. Vice-Chancellor Lewis, in the Tait Case, supra, apparently believed the testimony of Tait and his witnesses that at the time of the making of the Tait-Lafayette Building Corporation contract, Tait specifically insisted that the sale was to be of the tract of land regardless of area.
There is a patent variance in the testimony of the witnesses of the respective parties in the case sub judice. The complainant and his witnesses flatly contradict the defendant's *Page 139 
witnesses. Having observed the witnesses while testifying, and having in mind not only that which they testified to, but the manner in which they testified, and the impression made upon me at the time, and having since reviewed the testimony of the witnesses, I am of the opinion that the testimony of the complainant and his witnesses is entitled to greater credence than the testimony of the defendant's witnesses, as to the negotiation for the purchase of the property having been on a per acre basis. Riehl v. Riehl, 101 N.J. Eq. 15, 22; State v.Lanto, 99 N.J. Law 94.
It is urged in defendant's behalf that complainant and defendant were mutually mistaken as to the quantum of acreage which was the subject-matter of the negotiation between them, and, therefore, specific performance of the contract between complainant and defendant should be denied; that abatement should not be allowed, and that the contract should be rescinded. I do not find that there was a mutual mistake between the parties. The proofs do not warrant the complainant in being chargeable with any mistake whatever. Mutual mistake can exist only where both or all parties to a transaction are laboring under the same misapprehension or erroneous belief in regard to a particular fact or circumstance — that is, a mistake shared by both parties alike. 1 Black Rec. Can. 361 § 128. Rescission cannot be enforced or ordered on account of the mistake of one party only, which the other party did not share; there can be no rescission on account of the mistake of one party only, where the other party was not guilty of any fraud, concealment, undue influence or bad faith, did not not induce or encourage the mistake, and will not derive any unconscionable advantage from the enforcement of the contract. 1 Black Rec. Can. 363 § 128. A contract will not be rescinded in equity on the ground of mistake in its terms or provisions or as to the subject-matter, unless such mistake is established by clear, satisfactory and convincing proof. 1 Black Rec. Can. 416 § 155. By seeking the remedy of rescission the defendant necessarily acknowledges the "Agreement of Sale" as a contract. To rescind one must act promptly. Failure to rescind within a reasonable time is plenary evidence of the defendant's election *Page 140 
not to do so. Reed v. Benzine-ated Soap Co., 81 N.J. Eq. 182,185. The defendant's claim for rescission must, therefore, be regarded as untenable.
As to abatement — if such was not allowable except in a case where there was no mistake in a transaction, it might reasonably be urged that abatement could only be allowed in cases of fraud. It cannot reasonably be urged that there is any such limitation upon the rule of law relating to abatement. It is also urged in the defendant's behalf that the rule with respect to allowing abatement is applicable only to a case where a vendor seeks to compel the vendee to take the property. Such is not the fact. The taking of the property, with abatement, is the privilege of avendee. In Pom. Spec. Perf. Con. (3d ed. 1926) 903, 904 §438, it is said:
"The vendee may, if he so elect, enforce a specific performance to the extent of the vendor's ability to comply with the terms of the agreement, and may compel a conveyance of the vendor's deficient estate, or defective title or partial subject-matter, and have compensation for the difference between the actual performance and the performance which would have been an exact fulfillment of the terms of their contract. Or, to state the doctrine in language used by Lord Eldon in a leading case: `If a man having partial interests in an estate chooses to enter into a contract representing it and agreeing to sell it as his own, it is not competent to him afterwards to say, though he has valuable interests, he has not the entirety, and, therefore, the purchaser shall not have the benefit of his contract.' For the purpose of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract, that if the vendee chooses to take as much as he can have, he has a right to that and to an abatement, and the court will not hear the objection by the vendor, that the purchaser cannot have the whole."
In Sugd. Vend. P. 193, it is said:
"When a vendee seeks a specific execution of an agreement, there is much greater reason for affording the aid of the court to a purchaser when he is desirous of taking the part to which the title can be made."
In Hill v. Buckley, 17 Ves. Jr. 394, it is said that where a misrepresentation is made as to quantity, though innocently, the purchaser is entitled to have what the vendor can give, with an abatement out of the purchase-money for so much as the quantity falls short of the representation. The quantity of *Page 141 
land was represented to be two hundred and seventeen acres and ten perches. It turned out to be about twenty-six acres less, and the vendee had an abatement pro tanto. The same rule of specific performance pro tanto, at the suit of the purchaser, with compensation for deficiency by abatement of the purchase-money, was unanimously asserted by the New York court of appeals in Waters v. Travis, 9 Johns. 450. In White v.Weaver, 68 N.J. Eq. 644, it is said:
"A vendee, as complainant in a suit for specific performance, may procure a decree for the conveyance of the vendor's interest, with an abatement by way of compensation for defects in the title, although he knew of the defects when he began his suit."
In Couse v. Boyles, 4 N.J. Eq. 212, it appears the vendor agreed to convey one hundred and thirty-five acres, more or less. There was a deficiency of over twenty acres in the quantity of the land conveyed. The purchaser, upon a bill filed by the vendor for the foreclosure of a purchase-money mortgage, was allowed an abatement for the deficiency in the land. The court held that where land was sold as containing so many acres, more or less, if the quantity on an actual survey and estimation, either overrunning or falling short of the contents named, be small, no compensation should be received by either party; the words "more or less" must be intended to mean such a result; but, if the variance be considerable, the party sustaining the loss should be allowed for it, and that this rule should prevail when it arises from mistake only, without fraud or deception. It was also held that the rule applies although the land is not bought or sold professedly by the acre, the presumption being that in fixing the price regard was had to the quantity.
In Triplett v. Ivins, 93 N.J. Eq. 203, the complainant, as vendee, sought a decree of specific performance of a written contract for the sale of land with an abatement from the purchase price, and in the opinion of Vice-Chancellor Leaming (which was adopted by the court of errors and appeals) it is said (at p.206):
"Should complainant elect to take a conveyance of the life estate as of the date of the contract with an equitable abatement *Page 142 
from the purchase price there appears to be no doubt of his right to do so. Professor Pomeroy stated this right to be `too strongly fortified, as well as founded on reason, to be successfully denied.'" Pom. Spec. Per. Con. §§ 438, 439, and notes. * * *.
In Story's Eq. Jur. § 779, the general rule is said to be that the purchaser, if he choses, is entitled to have the contract specifically performed as far as the vendor can perform it, and to have an abatement out of the purchase-money, or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate, and that there is nothing in such rule of which a vendor can complain. It is indicated that it is his own fault if he has assumed an obligation which he cannot fulfill. It cannot be regarded as inequitable to require the defendant to perform, so far as it is in his power to perform.
The defendant is not compelled to convey anything which it did not agree to convey, and the complainant pays for what he gets according to the rate established by the contract in question.
In Lounsbery v. Locander, 25 N.J. Eq. 554, it is said:
"The general doctrine of equity is, that * * * on a bill by the purchaser, a vendor will be required to allow compensation, in case he is able to make title for a part if not for the whole, if the purchaser consents to accept part performance with such compensation."
In the case sub judice it cannot reasonably be urged by the defendant that it will be subjected to any condition of hardship if abatement be allowed against it, or that the complainant will derive any unconscionable advantage from the enforcement of the contract against it. If the defendant is paid what it is entitled to upon the basis of quantity of acreage which can be actually conveyed, it will still have a profit from the land acquired by it from its grantor Tait. It purchased the property from Tait for $85,000. If there be deducted from the purchase price stated in the "Agreement of Sale" aforesaid ($117,000) the sum of $600 per acre for the shortage of forty-two and thirty-nine hundredths acres which the defendant is unable to convey, the amount deducted would *Page 143 
be $25,434, thus leaving to the defendant the sum of $91,566, an excess of $6,566 over the amount paid by it to its grantor for the tract of lands in question. In Melick v. Dayton, 34 N.J. Eq. 245,
it was held that abatement was allowable where there was gross mistake, and that a gross mistake is where the quantity of land conveyed falls so far short of the quantity represented as to clearly warrant the conclusion that the grantee would not have contracted had he known the truth. In said case there was only a difference of four and forty hundredths of an acre (4.40) in a tract of ninety-seven acres, more or less. See, also,Frenche v. Chancellor, 51 N.J. Eq. 624, wherein it appeared that the defendant claimed he purchased the land by the acre and paid for it by the acre at the rate of one hundred and ninety-five and ninety-eight hundredths acres. The description of the premises in the deed concludes "containing one hundred and ninety-five and ninety-eight hundredths acres, be the same more or less." The court cited Couse v. Boyles, supra. In Straus
v. Norris, 78 N.J. Eq. 488, it was held that where through innocent mistake a grantor represented that a tract, described by metes and bounds, containing but sixty-nine and seventy-one hundredths acres, contained eighty-two acres, more or less, the grantee, purchasing by the acre and paying the price in ignorance of the deficiency, could sue in equity for the deficiency in the acreage; the words "more or less," not including a considerable variance, and the mistake being sufficient to induce the court to believe that if the truth had been known the purchase would not have been made.
Counsel for the defendant urges that specific performance, being a discretionary remedy, should not be exercised in the casesub judice. It must be borne in mind, however, that while specific performance is referred to as a discretionary remedy, it must be regarded as requiring the exercise by the court of a sound discretion. In Page v. Martin, 46 N.J. Eq. 585, the court of errors and appeals said (at p. 589):
"That relief rests not upon what the court must do, but rather what, in view of all the circumstances, it ought to do. * * * In every case of this character the court is chiefly concerned with the equities of the parties before it." *Page 144 
Counsel for the complainant urges that, even if the purchase price may not be regarded as having been fixed on a per acre basis, the property is of such a nature that it would be equitable for the court to allow abatement on the basis of so much per acre for the shortage, and that while it is true that a court of equity will not allow abatement where there is no way of fixing the amount thereof, it will allow abatement if there is any reasonable way of fixing the amount. The land in question, it is said, is of such nature and was bought for such purposes as that, even if the price was not fixed on the basis of so much per acre, the court may fairly allow abatement on that basis, for while there may be differences in value in different parts of the tract, it may be assumed that the shortage is over the whole tract. There is no doubt that whenever the court determines that abatement should be allowed, the matter may be referred to a master to determine, upon proper investigation, the amount which should be allowed by way of deduction from the purchase price. See Coster v. The Monroe Manufacturing Co., 2 N.J. Eq. 467
(at pp. 479, 480); also cited in Couse v. Boyles, 4 N.J. Eq. 212
(at p. 218). See, also, Triplett v. Ivins, 93 N.J. Eq. 202
(at p. 206), bottom.
The defendant, upon notice to the complainant, moved to strike the bill of complaint upon grounds stated in the notice. The hearing upon said motion was by order continued until the final hearing of the cause and after proofs taken. I will now advise an order denying said motion. I will advise also a decree for the complainant as prayed for in the bill of complaint as amended. I will advise an order referring to a master for investigation and report the question as to what amount should be allowed to the complainant by way of abatement from the purchase price mentioned in the "Agreement of Sale" aforesaid. *Page 145